Williams, Judge,
delivered the opinion of the court:
The plaintiff and the defendant entered into, a contract whereby the plaintiff agreed to furnish three vertical pumping units, for use at Yakima, Washington, to be- delivered f.o.b. cars at Milwaukee, Wisconsin, for a total price of' $37,000. It is conceded that the plaintiff delivered the-pumping units in accordance with the contract terms, and. that the defendant received and accepted the same. It is-further conceded that there is a balance due the- plaintiff' under the contract of $6,286.86. Against this admitted indebtedness to the plaintiff the United States interposes and *462 pleads a counterclaim in the sum of $8,867.21, an amount alleged to be due from plaintiff to the United States on another transaction. The question for decision therefore is the validity of the counterclaim.
It is alleged in the counterclaim:
(1) That the plaintiff on April 80, 1926, entered into a contract with the defendant by and through the National Advisory Committee for Aeronautics, to furnish all labor and material and to perform all work covered in connection with the manufacture of certain rope driving mechanism for the Propeller Research Equipment Laboratory at Langley Field, Hampton, Virginia, in accordance with the specifications attached to and made a part of the contract;
(2) That the equipment was furnished by the plaintiff and that the defendant accepted the same and paid the full contract price therefor upon its receipt:
(3) That the plaintiff guaranteed that the equipment would be adapted to the purpose outlined and would operate satisfactorily for a period of at least one year from the date it was first used under agreed conditions, provided, load conditions were as represented and stated in the specifications and provided the equipment was operated in an intelligent and proper manner, and also guaranteed to replace without charge any part or parts of equipment, which, within a period of one year showed signs of defective material or workmanship;
(4) That the equipment was installed during the summer of 1927 and failed to operate satisfactorily, and that the plaintiff was notified of that fact and requested to provide idlers or such other changes as might be necessary to make the equipment operate satisfactorily as guaranteed;
(5) That the plaintiff failed and neglected to comply with its guarantee that the transmission equipment would operate satisfactorily, and that the defendant by reason thereof incurred an expense of $8,867.21 in making the equipment operate satisfactorily and making it suitable for the purpose •outlined in the contract.
The burden is on the defendant to establish its counterclaim and the rule is well settled that the same character *463 of proof is required to establish a counterclaim as to sustain any other claim. Bethlehem Steel Co. v. United States, 75 C.Cls. 845, Heid Bros., Inc., v. United States, 65 C.Cls. 87. This the defendant, under the facts disclosed in the findings, has failed to do.
The plaintiff’s bid was submitted on the representation that the rope drive was to transmit the power from two 1,000 h.p. Diesel engines equipped with friction clutches. Dr. Munk, chief engineer of the defendant at Langley Field, represented to the plaintiff’s representative, in February 1926, before the contract was entered into, that certain tests in the wind tunnel would be conducted with only one engine and to obtain maximum velocity both engines would be run together; that the engines would be started with the clutches disengaged, brought up to a speed of 150 r.p.m. or more, and when the engines would be firing regularly and smoothly the clutches would be engaged gradually so as to start the drive without jerk; and that when only one engine was used, the second engine would be disconnected by means of the friction clutch, the engine used would be started, brought up to a speed where there would be uniform firing of the cylinders, the clutch engaged, and the drive started gradually and uniformly. A drawing was submitted by the defendant to the plaintiff to enable it to bid on the installation of the equipment, on which the Diesel engines are shown equipped with friction clutches. Also, the defendant, in order to enable the plaintiff to construct the equipment called for in the contract, furnished the plaintiff with three drawings which show Diesel engines equipped with friction clutches. Soon after the execution of the contract the plaintiff furnished the defendant with drawings, as representative of the final determination of the defendant in regard to the installation, made on the day the contract was signed, which drawings also show the engines equipped with friction clutches. Notwithstanding these representations, at the time the engines in question were installed and before they were used to operate the rope drive furnished by plaintiff the friction clutches were bolted and kept bolted thereafter, and *464 consequently they were not used to engage or disengage the engines from the texrope drive. The failure of the defendant to furnish the engines equipped with operable friction clutches constituted a breach of the contract.
A friction clutch has two functions, one to engage and •disengage the engine from the driven medium while in motion and the other to take up a certain pulsating or bucking motion of the engine while it is running at operating speed by permitting the clutch to slip. The proof shows and we have found that with the use of friction clutches to engage the engines after starting and to disengage the engines before stopping the transmission equipment furnished by plaintiff would have operated satisfactorily without the use ■of grooved idlers or other additional equipment. The defendant, therefore, by its failure to furnish engines equipped with friction clutches, was responsible for the additional •cost incurred in obtaining the satisfactory operation of the transmission equipment furnished by plaintiff. In these ■circumstances the counterclaim is not sustained.
The plaintiff is entitled to recover the amount admittedly due under the contract sued on, $6,286.86. Plaintiff is also entitled to interest on the said amount from May 20, 1929, the date on which the General Accounting Office deducted this sum from the amount otherwise due plaintiff, to March 3, 1933, the effective date of section 13 of the Treasury and Post Office Department appropriations act, amending the act of March 3, 1875, 47 Stat. 1516, amounting to $1,428.15, Whitebeck, Receiver, v. United States, 77 C.Cls. 309, decided April 10, 1933; Chicago, Idianapolis & Louisville Railway Co. v. Umted States, 78 C.Cls. 96; and Detroit Toledo & Ironton R.R. Co. v. United States, ante, p. 227.
The counterclaim is dismissed and judgment is awarded plaintiff in the sum of $7,715.01. It is so ordered.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.