**WESTERN MANAGEMENT, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–340T.**

United States Court of Federal Claims.

Jan. 21, 2000.

Robert E. Kovacevich, Spokane, WA, for plaintiff.

Michael F. Cox, U.S. Department of Justice, Washington, D.C., with whom were Assistant Attorney General Loretta C. Argett and Chief, Court of Federal Claims Section, Midlred L. Seidman. David Gustafson, U.S. Department of Justice, of counsel.

**OPINION**

FIRESTONE, Judge.

This tax refund action is currently before the court on the parties' cross motions for partial summary judgment on the issue of liability. The issues to be decided are: (1) whether, for tax years 1991, 1992, and 1993, Robert E. Kovacevich was a statutory employee of plaintiff corporation under 26 U.S.C. § 3121(d)(1) (1994 & Supp.1997); and (2) if so, whether plaintiff corporation is enti-

tled to relief under the safe harbor provision of section 530 of the Revenue Act of 1978.[1]

After carefully reviewing the submissions and arguments of the parties, the court hereby **GRANTS** defendant's cross motion for partial summary judgment.

## FACTUAL BACKGROUND

### I. Stipulated Facts

For purposes of partial summary judgment on the issue of liability, the following facts have been agreed to by the parties:[2]

1. Robert E. Kovacevich was admitted to practice law as an attorney in 1992 and 1993, having been admitted since the 1960s.

2. Robert E. Kovacevich was continuously engaged in the business of practicing law eighteen years before plaintiff was formed.

3. Robert E. Kovacevich was a specialist in certain practice areas.

4. The nature of the law practice of Robert E. Kovacevich required a great degree of skill and expertise.

5. From the time plaintiff was founded in 1981 through 1997, plaintiff's name was Robert E. Kovacevich, P.S.

6. From the time plaintiff was founded in 1981 through 1997, plaintiff was incorporated in the State of Washington as a professional services corporation.

7. From 1981 through 1997, one of the purposes of the corporation was "to practice law in accordance with Chapter 2.44 R.C.W. and Washington Supreme Court Rules for Admission to Practice 1–10 through its duly licensed employee or employees and clerks, secretaries, technicians, and assistants as may be allowable under said laws."

8. During 1992 and 1993, plaintiff was a "C" corporation for tax purposes.

9. Robert E. Kovacevich never agreed not to compete in the practice of law with plaintiff.

10. Account No. 13697–404 was opened in 1963.

11. Robert Kovacevich from 1963 through at least 1994 controlled account number 13697–404.

12. The income from the law practice was all deposited in bank account 13697–404 at the Seattle First National Bank.

13. From 1963 through 1981, Robert E. Kovacevich was engaged in the practice of law as a sole proprietor and deposited the income from his law practice in this account number 13697–404.

14. Plaintiff corporation maintained a pooled trust account.

15. Robert E. Kovacevich did not maintain a pooled trust account separate from plaintiff's account during the years in question.

16. Of all the checks written on account number 13697–404 in 1992 and 1993, not more than two were written to Robert E. Kovacevich expressly by name.

17. Robert Kovacevich was the incorporator and served as registered agent for plaintiff.

18. From the time plaintiff corporation was founded in 1981 through 1997, Robert E. Kovacevich was the sole shareholder, subject to the beneficial interest of Yvonne R. Kovacevich.

19. From the time plaintiff was founded in 1981 through 1997, Robert E. Kovacevich served as director of plaintiff.

20. From the time plaintiff was founded in 1981 through 1997, Robert E. Kovacevich served as president of the corporation.

1. Pub.L. No. 95–600, 92 Stat. 2763, 2885, codified at 26 U.S.C. § 3401 note (1979).

2. The facts listed here are repeated verbatim from the parties' agreed upon stipulations of relevant facts. The facts have been reorganized in order to present a chronological sequence of events.

21. From the time plaintiff was founded in 1981 through 1997, Robert E. Kovacevich controlled the corporation.

22. Robert E. Kovacevich made the major decisions for plaintiff.

23. Robert E. Kovacevich was ultimately responsible for the day-to-day management of plaintiff.

24. The plaintiff was controlled by Robert E. Kovacevich.

25. During 1992 or 1993, no officer or directors of plaintiff were elected, but Robert E. Kovacevich acted as president.

26. During 1992 and 1993 plaintiff had no formal corporate meetings.

27. During 1992 and 1993 plaintiff had no informal corporate meetings.

28. The plaintiff has no corporate minutes book.

29. During 1992 and 1993 Robert E. Kovacevich spent less than two hours each year working on corporate formalities as Officer or Director of Plaintiff.

30. Robert E. Kovacevich has never been paid by Plaintiff for performing the corporate formalities of plaintiff as an Officer or Director.

31. Robert E. Kovacevich worked approximately one hour per month on administrative matters for plaintiff and left daily administrative matters to employees under his supervision.

32. Robert E. Kovacevich spent a significant amount of time supervising plaintiff's employees to accomplish legal work.

33. Robert E. Kovacevich's assistants, including a paralegal, Colleen Frank, who performed research projects and other work for Robert E. Kovacevich, and who was under his supervision, were paid for out of Seafirst Bank Account # 13697404. Their salaries were deducted on plaintiff's corporate income tax return.

34. Yvonne R. Kovacevich filled in for employees of plaintiff when those employees were not available, and Yvonne R. Kovacevich was consulted with regard to support staff questions, but did not receive any payments from plaintiff for such work for the years in question.

35. Plaintiff's Forms 941 (Employer's Quarterly Federal Tax Return) for the quarters at issue in this case were signed by Robert Kovacevich as president.

36. Plaintiff's Form 940–EZ (Employer's Annual Federal Unemployment (FUTA) Tax Return) for the years at issue were signed by Robert Kovacevich as president.

37. Plaintiff's Form 1120 (U.S. Corporation Income Tax) for the fiscal year ending March 31, 1992, March 31, 1993, and March 31, 1994, were signed by Robert E. Kovacevich as president.

38. Colleen Frank testified that Robert E. Kovacevich was the only full-time attorney for plaintiff.

39. During the years 1992 and 1993, Robert E. Kovacevich performed legal services of approximately 60–70 hours per week, which he billed to clients through bills sent by plaintiff.

40. Robert E. Kovacevich approved all hires, some of which he never interviewed, and he fired all of plaintiff's employees. Additionally, he hired certain employees, including all law clerks and certain other employees.

41. Robert E. Kovacevich determined the salaries and bonuses of plaintiff's employees.

42. Robert E. Kovacevich was responsible for all performance reviews of plaintiff's employees, and in fact conducted informal performance reviews of Colleen Frank, which did not occur more frequently than once a year.

43. The credit lines of the business were all obtained through the personal net worth and credit of Robert E. Kovacevich and spouse.

44. Robert E. Kovacevich signed all of plaintiff's income tax returns and 940's and 941's for the quarters and years in question.

45. For the period March 1, 1991, through March 31, 1994, Robert Kovacevich signed all checks written from Seafirst Bank Account # 13697404.

46. For the period March 1, 1991, through March 31, 1994, all checks were written from Seafirst Bank Account # 13697404 identified the payor as "Robert Kovacevich, P.S. Attorneys, General Account."

47. Most payments made by checks from Seafirst Bank Account # 13697404 were deducted by the corporation for tax purposes.

48. The office lease in downtown Spokane, WA was paid for from funds from the Seafirst Bank Account # 13697404. For the period in question, the lease listed the names Robert E. Kovacevich, P.S. and Robert E. Kovacevich, as an individual. In earlier years, the leases referred to Robert E. Kovacevich only. The rent for the above-mentioned office space was deducted by the plaintiff on its corporate income tax return.

49. With the exception of a home office and storage space, Robert E. Kovacevich did not maintain another law office for the time in question.

50. The lease dated Oct. 23, 1981 on 530 Lincoln Building, Spokane, WA, leased the property to Robert Kovacevich individually for three years and not plaintiff.

51. The lease for five years commencing Feb. 19, 1991 on 530 Lincoln building leased the property for five years to both Robert E. Kovacevich individually and Robert Kovacevich, P.S.

52. The lease amendment dated March 1996 listed both Robert Kovacevich and Robert Kovacevich, P.S. as lessees.

53. The 1997 lease allowed Robert Kovacevich personal access to the building on weekends but did not mention any other Associates of Plaintiff.

54. Robert E. Kovacevich individually owned the rights to storage in the adjacent Grant building (agreed to for purposes of partial summary judgment purposes only).

55. The phone expenses for the Lincoln Building law offices used by Robert E. Kovacevich were paid from the Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

56. Legal reference materials (e.g. Journal of Taxation, Tax Notes, RIA) were paid from the Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

57. Office supplies (legal pads, pens, paper, etc...) were paid from the Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

58. Most business travel expenses for Robert E. Kovacevich were paid for from the Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

59. The 1991 Ford Explorer, driven primarily by Robert E. Kovacevich, was depreciated on the plaintiff's corporate income tax return.

60. Robert E. Kovacevich primarily used plaintiff's stationery to provide legal services, which was paid for by the Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return. Robert E. Kovacevich at times used his own stationery that indicated he was an attorney and listed his law degrees and bar admissions.

61. Robert E. Kovacevich's business cards were paid for by Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

62. Washington State Bar dues for Robert E. Kovacevich were paid for by Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

63. American Bar Association dues for Robert E. Kovacevich were paid for by Seafirst Bank Account # 13697404

and deducted by plaintiff on its corporate income tax return.

64. Local bar dues for Robert E. Kovacevich were paid for by Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

65. Continuing legal education expenses for Robert E. Kovacevich were paid for by Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

66. Health insurance benefits for Robert E. Kovacevich, his family and covered employees, was paid for by Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

67. Membership dues to the Spokane Club, a business, social and fitness club, for Robert E. Kovacevich were paid for out of the Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

68. Professional liability insurance for Robert E. Kovacevich was renewed through plaintiff and paid for by Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

69. In response to defendant's request for production of documents regarding fee agreements, Plaintiff identified and produced a draft fee agreement between plaintiff and IBC. Plaintiff and Robert E. Kovacevich know of no other fee agreements and did not locate any others.

70. Robert E. Kovacevich did not send out bills to clients for legal services separate from plaintiff.

71. Employees, on behalf of plaintiff, sent out the bills for legal services performed by it, including services performed by Robert E. Kovacevich.

72. The Yellow Pages directory of attorneys listing for Robert E. Kovacevich was paid for from the Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

73. Plaintiff had no resources to pay Robert E. Kovacevich except from the legal fees collected by Robert E. Kovacevich. The amount withdrawn by Robert E. Kovacevich from account number 13697–404 to pay personal bills depended upon the ability of Robert E. Kovacevich to generate fees from the law practice.

74. Plaintiff never paid Robert E. Kovacevich any salary in 1992 and 1993, but Robert E. Kovacevich withdrew money and wrote checks from Seafirst Bank Account # 13697404, virtually all of which was then deducted by plaintiff on its corporate income tax return.

75. Robert Kovacevich and Yvonne Kovacevich were married all during 1992, 1993, and 1994 and living in the state of Washington.

76. The State of Washington has a Community Property System of spousal ownership of property.

77. For purposes of partial summary judgment on liability, defendant stipulates to the truthfulness of this statement: The long standing practice in the community is that a significant segment of professionals and small business owners are not classified as employees of their solely owned or closely held corporation.

78. The plaintiff had minimal or no assets. It had no lines of credit. (Defendant does not agree but does not believe it is material)

79. By far the value and ownership of tangible assets used to carry on the law practice were owned by Robert E. Kovacevich and Yvonne R. Kovacevich. (Defendant does not agree but does not believe it is material)

80. Many of the checks withdrawn from account number 13697–404 for personal use were paid to Yvonne R. Kovacevich.

81. Plaintiff did not file a Form 1099 or a Form W–2 for Robert E. Kovacevich.

82. Plaintiff did not file a W–2 form for Robert E. Kovacevich in 1992 or 1993.

83. Plaintiff did not file a 1099 form for Robert E. Kovacevich in 1992 or 1993.

84. Robert E. Kovacevich was attorney of record in *Spicer Accounting, Inc. v. United States,* 918 F.2d 90 (9th Cir. 1990). He also was attorney of record in *Seeds, Inc. v. United States,* 82 A.F.T.R.2d 98–6426 (1998), and *Van Camp & Bennion v. United States,* 78 A.F.T.R.2d (RIA) 5843 (E.D.Wash. 1996).

85. Prior to the years at issue in this case, Plaintiff was audited by the IRS and notified that the IRS concluded that Robert E. Kovacevich was an employee of plaintiff.

86. Plaintiff did not disclose its position that it believed Robert E. Kovacevich was an independent contractor on any statements attached to plaintiff's employment tax returns (i.e. Forms 941) or unemployment tax returns (i.e. Forms 940), for the tax quarters and years in question.

87. Plaintiff did not file a Form 4670, Request for Relief from Payment of Income Tax Withholding, for the 1992 or 1993 calendar years.

88. On the Schedule SE, Self Employment Tax, for 1992, Robert E. Kovacevich reported self-employment income of $39,425.

89. On September 30, 1995, a check in the amount of $22,530.20 from account no. 13697–404 drawn on the Seattle First National Bank, Spokane and Eastern Branch, Spokane, Washington was paid to the Internal Revenue Service.

90. The check was paid on amounts billed by the IRS for alleged FICA, FUTA, and other employment taxes solely on a dispute of one worker Robert Kovacevich for the calendar year 1992.

91. Prior to the years at issue in this case, Plaintiff was audited by the IRS and notified that the IRS concluded that Robert E. Kovacevich was an employee of plaintiff.

92. All Forms 940 and 941 for the quarters and years ending in 1992 and 1993 were timely filed and the amounts reported were timely paid.

93. All withholding, FICA and FUTA taxes on employees classified as such by plaintiff and Robert E. Kovacevich for the quarters and years ending in 1992 and 1993 were timely reported, timely deposited, and paid with the 941 or 940 forms.

94. The only individual whose worker classification was questioned by the IRS for 1992 and 1993 is Robert E. Kovacevich.

95. Robert E. Kovacevich and Spouse filed 1040 tax returns for 1992 and 1993 and paid all taxes reported on those returns before the Internal Revenue Service audited plaintiff for employment taxes.

96. Robert E. Kovacevich paid $5,570 for 1992 on his schedule SE for 1992 as self-employment tax.

97. Robert Kovacevich paid $9,211 for 1993 on SE tax for 1993.

98. The SE tax paid by Robert E. Kovacevich for 1992 and 1993 was on the payments to him from Seafirst Bank Account # 13697404 and deducted by plaintiff on its corporate income tax return.

99. On Jan. 8, 1997, plaintiff submitted a claim for tax refund for FICA taxes for the disputed classification of Robert Kovacevich.

100. After the payment of $22,530.20 was submitted and before the refund claim, the IRS refunded $3,961.04 to plaintiff.

101. With respect to the amounts identified in this statement, plaintiff agrees that the IRS prepared the document that was identified as an assessment of employment taxes and that it was received by plaintiff. (Amounts are as identified in Defendant's Statement of Facts # 1 and are not repeated here).

102. With respect to the amounts identified in this statement, plaintiff agrees that the IRS prepared the document identified as an assessment of unemployment taxes and that it was received by plaintiff.

(Amounts are as identified in Defendant's Statement of Facts # 2 and are not repeated here).

## II. The Present Action

In 1992 and 1993, the Internal Revenue Service ("IRS") reclassified Robert E. Kovacevich as an employee of the plaintiff corporation. In September 1995, plaintiff corporation paid a portion of employment taxes due for the reclassified employee for the quarter ending March 31, 1992. Shortly thereafter, plaintiff corporation filed a claim with the IRS for refund of the taxes paid. On March 3, 1997, the IRS rejected plaintiff corporation's claim.

On May 15, 1997, plaintiff corporation filed its complaint in this court seeking a refund of the employment taxes it paid for Mr. Kovacevich. On December 11, 1998, defendant asserted a counterclaim against plaintiff corporation in the amount of $79,553.85 for the unpaid employment taxes, unemployment taxes, and penalties due for the remaining portion of the 1992 and 1993 tax years.

The parties filed cross motions for partial summary judgment on liability which were argued on December 16, 1999.

## DISCUSSION

### I. Standard of Review and Burden of Proof

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Rules of the Court of Federal Claims ("RCFC") 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Where as here, the plaintiff corporation is challenging a tax assessment, the burden is on the taxpayer to prove that the taxes assessed were erroneous. *See Consolidated Flooring v. United States,* 38 Fed.Cl.

450, 454 (1997) (citing *United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)). Plaintiff's assertion that the government bears the burden with respect to its counterclaim is misplaced. *Allis–Chalmers Mfg. v. United States,* 79 Ct.Cl. 453, 1934 WL 2121 (1934), upon which plaintiff corporation relies, is not a tax case and therefore is not applicable. It is well established that a tax assessment is presumptively correct and that the taxpayer bears the burden of persuasion that the Commissioner's assessment is erroneous. *See Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Missouri Pacific R.R. v. United States,* 168 Ct.Cl. 86, 90, 338 F.2d 668 (1964); *see also Sara Lee Corp. v. United States,* 29 Fed.Cl. 330, 338 (1993).

### II. Statutory Employee

■ The threshold question to be decided is whether Mr. Kovacevich was a statutory employee of the plaintiff corporation for the tax years in question. If Mr. Kovacevich was an employee of plaintiff corporation, 26 U.S.C. §§ 3111 and 3301 impose FICA and FUTA taxes (so-called "employment taxes") on the "wages" [3] plaintiff corporation paid to Mr. Kovacevich. *See* 26 U.S.C. §§ 3111, 3301–3311 (1994 & Supp.1997). Under 26 U.S.C. § 3121(d), an "employee" is defined as either: (1) any officer of a corporation (a "statutory" employee); or (2) any individual who, under the usual common law rules applicable in determining employer-employee relationship, has the status of an employee (a "common law" employee). IRS regulations further provide that an individual who is an officer of a corporation will not be considered an employee if that individual does not perform any services or performs only minor services for the corporation and does not receive and is not entitled to receive any remuneration. *See* Treas. Reg. § 31.3121(d)–1(b).[4]

---

3. The term "wages" for FICA and FUTA tax purposes includes "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." 26 U.S.C. §§ 3121(a), 3306(b).

4. Plaintiff corporation's reliance on the legislative history regarding the definition of "employ-

ee" in FUTA to show that Congress did not intend to include officers who did not do work for the corporation supports rather than defeats the government's argument. The government argues that Mr. Kovacevich is a statutory employee of the plaintiff corporation because he in fact did

For the reasons that follow, the court holds that Mr. Kovacevich, as president of plaintiff corporation, was a statutory employee who performed more than minor services for the corporation and thus, the plaintiff corporation was required to pay employment taxes on Mr. Kovacevich's wages.

The parties agree that from the time the plaintiff corporation was founded in 1981 through 1997, it existed for the purpose of "practicing law through its duly licensed employee or employees and clerks, secretaries, technicians, and assistants as may be allowable under said laws." Mr. Kovacevich named the corporation Robert E. Kovacevich, P.S.[5] The parties do not dispute that from its inception "[t]he plaintiff was controlled by Robert E. Kovacevich." Mr. Kovacevich's control was manifested in many ways. He undisputedly directed all of the legal work performed by plaintiff corporation's employees. Plaintiff corporation further stipulates that Mr. Kovacevich approved all hires for plaintiff corporation and was responsible for firing any of plaintiff corporation's employees. Mr. Kovacevich also determined the salaries and bonuses of plaintiff corporation's employees and conducted informal performance reviews.

Further, the parties agree that Mr. Kovacevich was responsible for all of the plaintiff corporation's financial decisions. Mr. Kovacevich signed all checks and all tax returns on behalf of the plaintiff corporation, including the corporation's Forms 941 (Employer's Quarterly Federal Tax Return), Forms 940–EZ (Employer's Annual Federal Unemployment (FUTA) Tax Return), and Forms 1120 (U.S. Corporation Income Tax) for the quarters at issue in this case. Robert E. Kovacevich signed these returns as president of plaintiff corporation.

The parties also stipulate that Mr. Kovacevich billed all of his clients through the plaintiff corporation and that Mr. Kovacevich signed checks on the same account used by the plaintiff corporation to pay for Mr. Kovacevich's law office expenses including: Mr. Kovacevich's bar membership; Mr. Kovacevich's professional liability insurance; Mr. Kovacevich's continuing legal education expenses; and legal reference materials. Mr. Kovacevich also received money from this same account for his and Mrs. Kovacevich's living expenses.

Plaintiff corporation contends, despite the above-stipulated facts, that Mr. Kovacevich is not a statutory employee because he did not perform services for the corporation, per se. In this connection, the plaintiff corporation notes that the parties also agree that for the tax years in question, plaintiff corporation elected no officers or directors, had no formal or informal corporate meetings, and did not keep a corporate minutes book. Additionally, plaintiff corporation notes that it never paid Mr. Kovacevich in connection with his performance of corporate formalities or for his services as an officer or director. Further, plaintiff corporation points to the fact that Mr. Kovacevich spent less than two hours each year working on corporate formalities and worked only one hour per month on administrative matters generally for plaintiff corporation. Under the stipulated facts, the parties agree that Mr. Kovacevich left daily management decisions to others in the corporation so that he could devote his time to practicing law. In such circumstances, plaintiff corporation argues, Mr. Kovacevich performed only minor services for the plaintiff corporation for which he was not paid and thus, Mr. Kovacevich was not an employee. Plaintiff corporation instead argues that Mr. Kovacevich performed his legal services separate from the plaintiff corporation and was an independent contractor.[6]

more than minor work for the plaintiff corporation.

5. The plaintiff corporation changed its name to Western Management, Inc. sometime after 1997.

6. Although the term "independent contractor" is not expressly defined in the Code, case law and IRS regulations identify several criteria that serve as indicia of independent contractor status.

For example, in Consolidated Flooring v. United States, 38 Fed.Cl. 450, 456 (1997), the court found that carpet installers who contracted with a floor installation business were "independent contractors" and not the business' employees for employment tax purposes based on the following factors: the business contracted with installers on per job basis; installers negotiated prices for jobs, turned jobs down, and worked without penalty for other companies; installers hired, super-

While plaintiff corporation endeavors to separate out Mr. Kovacevich's duties in overseeing corporate formalities and the day-to-day management of the corporation from Mr. Kovacevich's responsibilities in running the law practice that Mr. Kovacevich conducted and billed through the corporation, the argument fails. At bottom, plaintiff corporation's argument misses the fundamental point that Mr. Kovacevich's legal practice was the business of the plaintiff corporation and that Mr. Kovacevich, as president of the corporation, performed more than minor services for the corporation.

In this connection, the Claims Court decision in *National Wooden Box v. United States*, 59 F.Supp. 118, 103 Ct.Cl. 295 (1945), is instructive. In that case, the issue was whether the president of a trade association, who did not receive any pay, was nonetheless an employee of the association. *Id.* In determining whether an officer of a corporation is an employee of the corporation, the Claims Court looked to whether the officer is able to fix subordinate's wages, has the right to hire and fire employees, and receives compensation for his efforts. *Id.* at 121. The Claims Court concluded that where the president of a corporation does not exercise any powers, but simply presides over meetings and writes occasional letters without receiving any compensation, the president is not a statutory employee under the Code.[7]

Tested by the indicia identified in *National Wooden Box*, Mr. Kovacevich is clearly a statutory employee. The stipulated facts establish that Mr. Kovacevich was given an office, fixed employees' wages, and had the authority to hire and fire employees. In addition, the stipulated facts show that Mr. Kovacevich, as president of the plaintiff corporation, took money from the corporation to pay for his living expenses. Thus, unlike the president in *National Wooden Box*, Mr. Ko-

vacevich's role in running the corporation was significant. Moreover, regardless of whether Mr. Kovacevich paid himself for performing corporate formalities for the corporation, he took money from the corporation's account to pay his living expenses, and those payments were then deducted from the corporation's taxes on the corporate tax returns.

In this regard, Mr. Kovacevich is much like Mr. Van Camp (one of Mr. Kovacevich's clients) in *Van Camp & Bennion v. United States*, 78 A.F.T.R.2d (RIA) 5843, 1996 WL 529225 (E.D.Wash.1996) who, as president of his professional services corporation, was found to be a statutory employee. In *Van Camp*, the two shareholders in the legal services corporation claimed that they were independent contractors. The court held that Van Camp, a director and president of the corporation, was a statutory employee of the corporation, based upon the facts that Van Camp made all the management decisions for the company, hired and fired employees, secured bank loans, approved bills, and signed corporate checks. The court stated that the corporation depended upon Van Camp's name in order to secure business, and Van Camp's work could not be described as an independent or separate business. Further, the court found that the services generating fees were an integral part of the taxpayer's business and not incidental to a separate business. Thus, the court concluded that Van Camp's work on behalf of the law practice amounted to more than minor services to the corporation.[8] *Id.* at *5; *see also Spicer Accounting v. United States*, 918 F.2d 90, 92 (9th Cir.1990) ("[A]n officer who performs substantial services for the corporation is considered an employee whose wages are subject to FICA and FUTA."); *Radtke v. United States*, 712 F.Supp. 143 (E.D.Wis. 1989), *aff'd*, 895 F.2d 1196 (7th Cir.1990) (stating that sole director, shareholder, and

---

vised, and set pay for those who helped them complete installation jobs; and installers owned and used their own tools and supplies.

7. The definition of "employee" in *National Wooden Box* appeared in the Social Security Act. *See* 42 U.S.C. § 1301(a)(6) (1940) ("the term 'employee' includes an officer of a corporation.") It is not disputed that this portion of the definition was recodified in § 3121(d)(1) of the I.R.C.

8. The court in *Van Camp* held that the other officer of the corporation, Mr. Bennion, was not an employee of the corporation, because of his semi-retirement status and the limited extent of his legal practice at the time. *See Van Camp*, 1996 WL 529225, at *5. In light of the facts of this case, Mr. Kovacevich cannot be analogized to Mr. Bennion.

unpaid president of professional legal services corporation considered to be an employee of that corporation).

Here, Mr. Kovacevich's work, like Mr. Van Camp's, cannot be described as independent or separate from the corporation's business; Mr. Kovacevich's business and the corporation's business were one in the same for the tax years in question. Mr. Kovacevich generated fees for plaintiff corporation's business. These fees, in turn, were used to pay the salaries and expenses for the corporation, including the Kovacevich's personal and living expenses. For all of these reasons, Mr. Kovacevich, as president of plaintiff corporation, was clearly a statutory employee.

The court recognizes that the tax consequences are different when an individual has dual roles in a corporation—such as that of secretary of the corporation and that of a lawyer for the corporation. *See Idaho Ambucare Ctr., Inc. v. United States,* 57 F.3d 752, 757 (9th Cir.1995). In *Idaho Ambucare,* the Ninth Circuit recognized in a footnote that where there is an "attorney in private law practice who serves as secretary of a corporation and also performs legal services ... [a] distinction can be drawn between the attorney's 'official' functions—which may be nominal, thus rendering the attorney outside the parameters of [section] 3121(d)(1)—and his duties as corporate outside counsel." *Id.* at 757, n. 15.

The IRS has a revenue ruling that reaches the same conclusion with respect to insurance agents. In Revenue Ruling 58–505 (1958), the IRS explained that the propriety of a dual capacity analysis turns on "whether [the] services in the two capacities ... are interrelated." Revenue Ruling 58–505 addressed in particular whether the president and secretary of an insurance company, who also sold insurance policies under the company's standard agent contracts, should be treated as statutory employees with respect to their duties and commissions for selling insurance policies. The IRS stated that "if there is no interrelation either as to duties or remuneration in the two capacities, then the status of each type of service must be considered separately." Rev. Rul. 58–505. The IRS found that the president and secretary's

duties as officers were separate and distinct from their sales services and therefore, the IRS concluded that the commissions should be treated separately from the officer salaries. *Id.*

In contrast to the dual capacity situations identified above, the duties Mr. Kovacevich performed and the remuneration he received from the plaintiff corporation cannot be separated out into separate roles. Mr. Kovacevich made the ultimate management and financial decisions for plaintiff corporation. For this work, Mr. Kovacevich drew money from plaintiff corporation to pay for his professional and personal expenses. Clearly, Mr. Kovacevich's duties and remuneration as the head of the corporation and as an attorney who worked through the corporation were interrelated and intermingled. Conceivably, Mr. Kovacevich could have set up his relationship with plaintiff corporation in such a way as to establish a dual capacity. The stipulated facts agreed to here, however, do not support that result.

Plaintiff corporation's additional contention that it was not liable for paying taxes on Mr. Kovacevich's payments, because it was not the statutory employer of Mr. Kovacevich is equally unfounded. Section 3401(d)(1) of Title 26 provides that one is only an employer if it controls payment of its worker's wages. *See Consolidated Flooring Servs. v. United States,* 38 Fed.Cl. 450, 459 (1997). In *Consolidated Flooring,* the court held that "the party with control over the payment of such wages under 26 U.S.C. § 3401(d)(1), is the party with control of the account from which wages are paid." *Id.* In this case, it is undisputed that Robert Kovacevich from 1963 through at least 1994 controlled account number 1369–404. Consequently, plaintiff corporation argues that Mr. Kovacevich (not plaintiff corporation) had control over the account from which wages were paid.

Contrary to plaintiff corporation's contentions, *Consolidated Flooring* does not support plaintiff corporation's case. The fact that Mr. Kovacevich made the financial decisions for the corporation does not mean that it was not the corporation that was actually paying Mr. Kovacevich. Mr. Kovacevich took money billed by the corporation and

paid to the corporation to pay himself and others. Moreover, Mr. Kovacevich cannot escape the fact that the plaintiff corporation deducted the payments it made to Mr. Kovacevich on its corporate tax returns. In such circumstances, the plaintiff corporation was the employer.

Plaintiff corporation's reliance on *Marlar, Inc. v. United States,* 151 F.3d 962 (9th Cir.1998), to suggest that the corporation served as only a conduit for Mr. Kovacevich is also without merit. In *Marlar,* the court concluded that fees generated by club dancers that are paid by the customer to the corporation but are then simply turned over to the dancer's accounts are not "wages," because the corporation is simply a conduit. Here, in contrast, Mr. Kovacevich's legal bills were sent out under the plaintiff corporation's name. The plaintiff corporation, in turn, then made payments from these fees to both Mr. Kovacevich and the other recognized "employees" of the plaintiff corporation. All of these payments were then deducted by the plaintiff corporation on its corporate tax return. In such circumstances, the plaintiff corporation was more than a mere conduit of funds.

Plaintiff corporation's reliance on *Magruder v. Yellow Cab Co.,* 141 F.2d 324 (4th Cir.1944), is similarly misplaced. In *Magruder,* the court held that the cab drivers were lessees, not employees, of the cab company who owned the cabs and therefore, payments made by third parties to the cab drivers were not wages subject to federal insurance contribution tax. First, nothing in the stipulated facts suggests that Mr. Kovacevich and plaintiff corporation had a lessor-lessee relationship. Second, the stipulated facts demonstrate that Mr. Kovacevich, unlike the cab drivers in *Magruder,* did not bill his clients separately from plaintiff, but rather, plaintiff

corporation sent out bills for legal services performed by Mr. Kovacevich. Therefore, *Magruder* is clearly inapposite.

For all of the reasons stated above, the court concludes that Robert E. Kovacevich, as president of Robert E. Kovacevich, P.S., was a statutory employee of plaintiff corporation under 26 U.S.C. § 3121(d)(1), who provided more than minor services to plaintiff corporation.[9] Having concluded that Robert E. Kovacevich was a statutory employee under § 3121(d)(1), as the president of the plaintiff corporation, the court does not reach the issue of whether Mr. Kovacevich was also a common law employee. *See Institute for Resource Mgmt. v. United States,* 22 Cl.Ct. 114, 1990 WL 188923 (1990). Accordingly, absent relief under section 530, the plaintiff corporation was responsible for paying FICA and FUTA taxes in connection with its payments to Mr. Kovacevich during the tax years in question.[10]

### III. Section 530 Relief

 Having determined above that Mr. Kovacevich was a statutory employee of plaintiff corporation for the years in question, the court must now determine whether plaintiff corporation may rely on the safe harbor provision of section 530 of the Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763, 2885, codified at 26 U.S.C. § 3401 note (1979), to avoid that tax liability. Section 530 was enacted by Congress to provide relief for businesses who had been treating their workers as independent contractors, even though they might be considered to be employees under the Code. *See Institute for Resource Mgmt.,* 22 Cl.Ct. at 114.

Section 530 states, in relevant part:

9. Plaintiff corporation's argument that the IRS is unable to collect the employment taxes at issue because of state law limitations regarding the practice of law in the State of Washington is without merit. As noted by the defendant in its brief, employment status under section 3121(d)(1) is a question of federal law. Further, an attorney-owner of a State of Washington professional legal services corporation already has been found to be an employee for purposes of paying federal employment taxes. *See Van Camp*

*& Bennion, P.S. v. United States,* 78 A.F.T.R.2d (RIA) 5843 (E.D.Wash.1996).

10. The court recognizes that Mr. Kovacevich paid self-employment taxes on certain amounts that he received from the plaintiff corporation. The court will address how those payments should be accounted for in the next phase of this case. The payments do not, however, excuse the plaintiff corporation's liability for not paying employment taxes for Mr. Kovacevich.

(a) Termination of certain employment tax liability—

 (1) In general—IF:

 (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

 (B) in the case of periods after Dec. 31, 1978, all Federal tax returns ... required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

Pub.L. No. 95–600, § 530.

In order to qualify for section 530 relief, a taxpayer must have filed all of its tax returns consistent with treating the worker as an independent contractor. This includes reporting on a Form 1099 any payment of $600 or more made by a person engaged in a business to another person. *See* 26 U.S.C. § 6041(a) (1986). As stated by the Federal Circuit in *Henry v. United States*, 793 F.2d 289, 291 (Fed.Cir.1986):

"As we read it, the subsection provides in clear and unambiguous language that in order to qualify for the automatic relief specified therein, the taxpayer is required to file all federal tax returns, including information returns (Form 1099) ... on a basis which is consistent with the taxpayer's treatment of each worker as an independent contractor, rather than as an employee."

Here, the parties stipulate that plaintiff corporation did not file a Form 1099 for Mr. Kovacevich for the years in question. In such circumstances, plaintiff corporation may not rely on the safe harbor provision.

Plaintiff corporation's contention that it did not have to file a Form 1099 because Mr. Kovacevich, not the corporation, controlled the bank account is without merit. The stipulated facts state that for the relevant time period all checks were written on an account that identified the payor as the plaintiff corporation. Therefore, if the plaintiff corporation had wanted to treat the payments to Mr. Kovacevich as payments to an independent contractor, it needed to have filed Forms 1099.

Plaintiff corporation's contention that it did not have to file a Form 1099 because it was engaged in a joint venture with Mr. Kovacevich is also without merit. The stipulated facts do not suggest that Mr. Kovacevich and the plaintiff corporation were engaged in a joint venture. In addition, the plaintiff corporation never filed a partnership return, as required under 26 U.S.C. §§ 761(a) and 6031(a), indicating a joint venture between Mr. Kovacevich and plaintiff corporation. Further, the plaintiff corporation cannot now claim it was in a joint venture with Mr. Kovacevich. Having elected to incorporate as a business, by creating a professional corporation, that form cannot now be disregarded. *See Kraft v. United States*, 991 F.2d 292, 297 (6th Cir.1993). In sum, because it failed to file the requisite tax forms, plaintiff corporation is not eligible for section 530 relief.[11]

## CONCLUSION

For the reasons stated above, defendant's cross motion for partial summary judgment on the issues of whether Robert E. Kovace-

---

**11.** Having concluded that plaintiff corporation is ineligible for section 530 relief based on its failure to file the requisite tax forms, the court does not need to reach the issue of whether plaintiff corporation had a reasonable basis for not treating Mr. Kovacevich as an employee. The court notes, however, that the IRS put plaintiff corporation on notice prior to the tax years in question that it considered Mr. Kovacevich an employee. Moreover, the decisions in *Van Camp* and *Spicer*, cases in which Mr. Kovacevich was attorney of record, rejected arguments similar to those put forth here for not treating an officer as an employee. Based on these facts, it would be unlikely that plaintiff corporation was "reasonable" in relying on the long-standing industry practice in the community. *See Marlar, Inc.*, 151 F.3d at 966 ("[U]nder § 530, any reliance on industry practice must be 'reasonable.' ").

vich is a statutory employee and whether plaintiff corporation is entitled to section 530 relief is **GRANTED.** Plaintiff's cross motion on the same issues is **DENIED.** The court shall set a status conference within 30 days to discuss a process for determining the tax and penalty amounts owed by plaintiff corporation for the tax years in question.