T.C. Memo. 2009-160

UNITED STATES TAX COURT

YVONNE R. KOVACEVICH AND ROBERT E. KOVACEVICH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14545-06L.                    Filed July 1, 2009.

Robert E. Kovacevich, pro se.

<u>Fred E. Green</u> and <u>Paul C. Feinberg</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  Robert and Yvonne Kovacevich challenge the
Commissioner's decision to collect their unpaid 1992 income taxes
by levy.  Their main argument is that the IRS failed to properly
credit five checks against their outstanding balance for that
year.

## Background[1]

This case is one of several arising from a long-running dispute between Robert Kovacevich and the IRS about whether he was an employee or an independent contractor of his law firm. The firm changed its name during the years this dispute raged, which can make following the cases from year to year confusing. But the year before us is 1992, so we begin there.

In 1992, Robert's firm (which he had incorporated) was named Robert E. Kovacevich, P.S., and he treated himself as an independent contractor--meaning that the firm did not withhold payroll taxes from what it paid him. This was to the firm's advantage, because employers must generally deduct and withhold payroll taxes--including income tax, Social Security (FICA) tax, Medicare tax, and unemployment (FUTA) tax--from their employees' paychecks. The income tax withheld is a credit against the income tax owed by the taxpayer at the end of the year. FICA tax has two portions, one paid by the employer and one paid by the employee; the employer pays its portion and withholds the employee's. Employers must deposit withheld income and FICA taxes into a bank account within a short time after the

---

[1] This background information comes from W. Mgt., Inc. v. United States, 45 Fed. Cl. 543 (2000), Kovacevich v. Commissioner, T.C. Memo. 2003-161, affd. 177 Fed. Appx. 561 (9th Cir. 2006), W. Mgt., Inc. v. Commissioner, T.C. Memo. 2003-162, affd. in part and remanded in part 176 Fed. Appx. 778 (9th Cir. 2006), and W. Mgt., Inc. v. Commissioner, T.C. Memo. 2007-211, affd. 314 Fed. Appx. 65 (9th Cir. 2009).

employee's paycheck is cut.  This is called the "trust fund" system because it is deemed a special fund in trust for the United States under section 7501(a).[2]  Slodov v. United States, 436 U.S. 238, 243 (1978).  If a corporate employer doesn't pay over the withheld money, the Commissioner may collect it from a "responsible person"; i.e., an actual person who was required to pay over the tax.  Money that's collected this way is called a trust-fund-recovery-penalty tax.  Sec. 6672.

By characterizing Robert as a self-employed individual, his firm was making him responsible for paying all those taxes otherwise collected through payroll deductions.  When he and his wife filed their 1992 tax return, they reported $90,000 that he got from the firm as self-employment income, and paid $5,570 in self-employment tax under section 1401, which is a tax equal to the employer's portion of the FICA tax.  Kovacevich, T.C. Memo. 2003-161; Western Management, 45 Fed. Cl. at 548.

The Commissioner disagreed with the Kovaceviches about whether Robert was an independent contractor.  He asserted that Robert was an employee, and sent the Kovaceviches a notice of deficiency based in part on that belief, but also disallowing various deductions and claiming that Robert and Yvonne had failed

---

[2] Unless otherwise indicated, references to sections in this opinion are to the Internal Revenue Code as amended, and all references to Rules are to the Tax Court's Rules of Practice and Procedure.

to report about $45,000 in additional income.  Kovacevich, T.C. Memo. 2003-161.

The Kovaceviches filed a petition with our Court.  After finding in the Commissioner's favor on most issues, we ordered a computation under Rule 155.[3]  The Kovaceviches asked us to take several checks into consideration as part of this computation process, but we denied those requests and upheld the Commissioner's computations, finding a $13,329 deficiency and an accuracy-related penalty under section 6662 of $2,160 for 1992. Kovacevich, T.C. Memo. 2003-161, Kovacevich v. Commissioner, No. 12815-99 (T.C. Jan. 15, 2004) (order and decision).  The Kovaceviches appealed and the Ninth Circuit affirmed. Kovacevich, 177 Fed. Appx. 561 (9th Cir. 2006).

The Commissioner's recharacterization of Robert as an employee of his law firm had a couple important effects.  The first was to eliminate the Kovaceviches' liability for Robert's self-employment tax, but also eliminate their right to deduct half that tax as a personal deduction.

The second important effect was to cast the entire obligation to pay employment taxes onto Robert's firm, which by then had changed its name to Western Management, Inc.  The Commissioner went after the firm for its failure to pay

---

[3] Rule 155 allows the Court to issue an opinion but withhold a final decision until the parties submit computations of the correct amount to be included.

employment taxes for Robert's services by issuing it a notice of deficiency for 1994 and the first quarter of 1995. Western Management also filed a petition with our Court, but we again upheld the Commissioner's determination. Western Management, T.C. Memo. 2003-162. Part of this case was another computational dispute and the Ninth Circuit remanded it to us to review whether the Commissioner had considered certain credits against the company's liability. Western Management, 176 Fed. Appx. 778, 781 (9th Cir. 2006). We found on remand that, as of 2004, the Kovaceviches themselves had paid all taxes related to the wages Robert earned during the periods at issue. Under section 3402(d), these payments had to be credited to Western Management's account, reducing the firm's deficiency to zero. Western Management v. Commissioner, No. 12686-99 (T.C. Aug. 3, 2007) (order and decision). Western Management appealed this decision too, claiming we should have abated the FICA and FUTA taxes it owed and should have awarded it attorney's fees. The Ninth Circuit recently affirmed our ruling. Western Management v. Commissioner, 314 Fed. Appx. 65 (9th Cir. 2009).

But the Kovaceviches' 1992 individual income-tax case and Western Management's 1994-and-a-bit-of-1995 employment-tax case were only two fronts in their war with the IRS. The Commissioner also determined that Western Management owed employment taxes for 1991, 1992, and 1993. Western Management paid up and sued for a

refund in the Court of Federal Claims.  <u>Western Management v.</u> <u>United States</u>, 45 Fed. Cl. 543 (2000).  The key issue in that case was the same as it was in the earlier Tax Court cases:  Was Robert an employee or an independent contractor?  And the Claims Court answered that question the same way we had--finding that he was an employee.  That case, however, seems to be stuck on crediting questions.  See <u>id</u>. at 553 n.11.  As of June 2009, that phase had not yet concluded.

In 2004, the Commissioner opened another front by assessing a trust-fund-recovery penalty under section 6672 against Robert for all four quarters of 1994 and the first quarter of 1995.  As mentioned above, the Code lets the IRS collect unpaid employer taxes as a penalty from "any person required to collect, truthfully account for, and pay over any tax imposed by this title" in the amount of 100 percent of the unpaid tax--the Commissioner, in other words was claiming that Robert was a "responsible person" for his firm.

And that brings us back to the 1992 tax year for the Kovaceviches themselves.  We had entered decision against them in 2003 and, though they had appealed our decision, the Commissioner assessed the amount we found due, see sec. 7485,[4] and began

---

[4] Section 6213 bars the IRS from assessing a tax liability until our decision becomes final, and section 7481 makes our decisions final only when all opportunities for appeal have been exhausted.  But section 7485 trumps this by stating that

(continued...)

trying to collect it.  In April 2005, the Commissioner sent them a notice that he intended to levy upon their property to collect what was by then more than $10,000.  They each mailed back a timely request for a collection due process (CDP) hearing. Before the hearing, the Kovaceviches sent the Appeals officer copies of four checks they believed should be credited to their 1992 account.  The Appeals officer held the hearing and in July 2006 sent them a notice of determination upholding the levy.  In this notice, the Appeals officer explained that she would not consider whether the IRS had properly credited the checks the Kovaceviches claim to have sent, reasoning that this was an impermissible challenge to their underlying tax liability, see sec. 6330(c)(2)(B), that the checks related to years not at issue in the CDP hearing, or that she shouldn't do so because the crediting matter was in front of the Tax Court on remand from the Ninth Circuit as part of the Western Management line of cases.

She also rejected the Kovaceviches' request that she contact the Social Security Administration to ensure the proper crediting of Robert's SSA account once the question of his status as an employee or independent contractor was settled, stating that this claim could be made only via a claim for refund outside of the

---

⁴(...continued)
assessment shall only be stayed during an appeal if the taxpayer posts a bond.  There is no evidence the Kovaceviches did that.

collections hearing process.[5]  But then, perhaps out of an abundance of caution, she attached a table showing that she had researched three of the four checks and found them applied to liabilities other than the Kovaceviches' unpaid 1992 liability.

On appeal, the Kovaceviches argue mainly that the Appeals officer abused her discretion in finding that the four checks they brought to her attention did not need to be credited to their 1992 tax debt.[6]  They also argue that the Commissioner should have credited their 1992 account for the amount of a fifth check--number 10376--which they produced at trial.

---

[5] The Kovaceviches also paid a filing fee for the IRS to consider a collections alternative.  The IRS later returned the fee after the Kovaceviches failed to provide any of the required information.

[6] The Kovaceviches make one meritless argument--that it was an abuse of discretion not to give them a certified transcript, Form 4340, at the hearing.  We routinely hold that nothing in the Code requires an Appeals officer to furnish a taxpayer with a Form 4340 during a CDP hearing.  See, e.g., Nestor v. Commissioner, 118 T.C. 162, 166 (2002).

They also ask us to reopen the trial record so they can call the IRS employee who they say was responsible for the audit of their 1992 taxes.  But what goes on during audits is immaterial to the de novo record on which we decide deficiency cases. Greenberg Express, Inc. v. Commissioner, 62 T.C. 324, 327-28 (1974).  And this isn't a deficiency case--it's a CDP case where the amount of the liability isn't even an issue.

The checks in question are:

| Check No. | Date | Amount | Payor | Apply to |
|---|---|---|---|---|
| 3747 | 3/30/91 | $21,985.48 | Robert E. Kovacevich, P.S. | "Employment tax 3-31-88-9/30/88; 1989; 3/31/89-9/30/89; 3/31/90-9/30/90" |
| 7438 | 9/30/95 | $22,583.20 | Robert E. Kovacevich, P.S. | "941 taxes[7] 3/31/92-12/31/92; 941 taxes 3/31/93-12/31/93. For payment of 941 taxes only no interest or penalties" |
| 10161 | 9/29/03 | $7,682.00 | Robert and Yvonne | "Payment of employment tax Western Management Inc. For 6672 penalty to withholding tax only. Directed payment for 1994 taxes of Robert E. Kovacevich classified as employee" |
| 10376 | 4/28/04 | $7,514.40 | Robert and Yvonne | "Payment of employment tax ONLY Western Management Inc. Directed payment for TAX ONLY 1994 for Robert E. Kovacevich classified as employee" |
| 7641 | 11/23/04 | $8,276.50 | Robert and | "6672 penalty on |

[7] We assume the Kovaceviches intended "941 taxes" to mean Western Management's quarterly employment taxes, which would have been submitted with a Form 941, "Employer's Quarterly Federal Tax Return."

The Kovaceviches resided in Spokane, Washington when they filed their petition.

## Discussion

The Kovaceviches ask us to resolve the check-crediting issue and also object to the Appeals officer's refusal to transmit certain information to the Social Security Administration. Their case--perhaps an easy one if the Appeals officer had simply reviewed IRS records to see whether any of the checks the Kovaceviches showed her should have had any effect on their 1992 individual income-tax liability--instead raises some difficult procedural questions that we need to discuss before reaching the merits of the crediting question:

- ! Can we look at the crediting of check 10376, which the Kovaceviches didn't present at the CDP hearing?

- ! Is an examination of the crediting of payments to the IRS a challenge to a taxpayer's "underlying tax liability" or a dispute about whether the IRS followed an "administrative procedure?"--a question that determines our standard of review; and

- ! Does collateral estoppel or *res judicata* bar later administrative challenges to crediting when they could have been made at the computational stage of an earlier deficiency case?

## I.   Procedural Issues

### A.   Check 10376

Check 10376 stands by itself because the Kovaceviches did not put that check in front of the Appeals officer during the CDP hearing--meaning we have no determination to review on that

question.  The Commissioner argues in his brief that we shouldn't consider that check because it was not part of the administrative record.  We have already held, however, that we are not limited to the administrative record in reviewing CDP determinations. Robinette v. Commissioner, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006).  As a reviewed opinion, Robinette remains good law in our Court unless a case is to be appealed to the Eighth Circuit; this case is not.  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).[8]

Because we do not follow the record rule, we will consider evidence not produced at the CDP hearing if it is relevant to issues raised during the hearing and is admissible under the Federal Rules of Evidence.  The Commissioner, however, will often object to evidence that a taxpayer introduces for the first time at trial in our Court on the ground that evidence not put before the Appeals officer during the CDP hearing is irrelevant to the question of whether that officer abused her discretion.  Murphy v. Commissioner, 125 T.C. 301, 313-14 (2005), affd. 469 F.3d 27 (1st Cir. 2006).  But in this case, the Commissioner did not object to entry of this check into evidence, so we can dodge any

---

[8] In a very recent decision, the Ninth Circuit cited the Eighth Circuit's opinion in Robinette favorably.  See Keller v. Commissioner, -- F.3d --, 2009 WL 1532197 (9th Cir. June 3, 2009) at *4.  Given the result we reach in this case, we need not consider Keller's effect on the continuing vitality of our Court's opinion in Robinette.

further analysis--an evidentiary objection unmade at trial is waived.  Fed. R. Evid. 103(a); <u>Fuller v. Commissioner</u>, 20 T.C. 308, 314 (1953), affd. 213 F.2d 102 (10th Cir. 1954).

B. <u>Crediting as a Challenge to the Underlying Liability</u>

The Commissioner next concedes on brief that the Appeals officer was wrong to conclude that she need not, or could not, or should not, investigate whether the checks should have been credited against the Kovaceviches' unpaid 1992 liability.  We need to explain this concession to explain the problems that it creates.

The concession springs from the Commissioner's reading of section 6330(c), which lists what a taxpayer may raise during a CDP hearing:

> SEC. 6330(c).  Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing *any relevant issue relating to the unpaid tax* or the proposed levy, including--
>
> (i) appropriate spousal defenses;
>
> (ii) challenges to the appropriateness of collection actions; and
>
> (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets,

> installment agreement, or an offer-in-compromise.
>
> (B) Underlying liability.--The person may also raise at the hearing challenges to the *existence or amount of the underlying tax liability* for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.  [Emphasis added.]

Because the Kovaceviches received a notice of deficiency for 1992, their "underlying liability" could not have been properly at issue in the CDP hearing.  The Appeals officer clearly understood this as a general principle.  The Kovaceviches do not, as is plain from their reliance on Perkins v. Commissioner, 129 T.C. 58, 64 (2007), a case in which the taxpayers could challenge the underlying deficiency because "no statutory notice of deficiency was sent to petitioner" for the year at issue.  But the application of this general principle requires an answer to a more precise question:  Is a dispute about whether a particular check should have been credited toward a particular tax liability a prohibited "challenge to the underlying tax liability?"

Our analysis requires a brief detour into tax jargon: liability, deficiency, and assessment.  A tax *liability* is the tax imposed by the Code on a particular taxpayer for a particular tax year.  Sec. 26(b)(1).  For an individual who correctly reports his taxes, that liability is the amount of tax shown on his return.  A *deficiency* is the difference between the amount of

a taxpayer's liability and the amount shown on his return--in other words, the difference between a taxpayer's liability under the Code and what he admits that he owes on his return.  Sec. 6211.  An *assessment* is the recording of a liability in the Commissioner's books.  Sec. 6203.

With these definitions in place, it might seem at first reading that challenges to the proper crediting of checks that a taxpayer sends to the IRS are not "challenges to the underlying liability," because they don't raise questions of the amount of tax imposed by the Code for a particular tax year.  They raise, instead, questions of whether that liability remains unpaid.  The Commissioner agrees, arguing that "the very structure of section 6330 reinforces the distinction between liability and payment of unpaid tax."  The Commissioner points out that section 6330(c)(2)(A) starts by saying, "the [taxpayer] may raise at the hearing any relevant issue relating to the *unpaid tax* . . . ," whereas section 6330(c)(2)(B) says the taxpayer may raise challenges "to the existence or amount of the *underlying tax liability*" if the taxpayer has not received a notice of

deficiency.[9]  (Emphasis added.)  In <u>Freije v. Commissioner</u>, 125

T.C. 14, 26 (2005), we reasoned:

> considering the terms of the statute in their ordinary
> meaning, a "relevant issue relating to the unpaid tax
> or the proposed levy" surely includes a claim, such as
> the one here, that the "unpaid tax" has in fact been
> satisfied by a remittance that the Commissioner im-
> properly applied elsewhere.

So we agree with the Commissioner on this one, and hold that

questions about whether a particular check was properly credited

to a particular taxpayer's account for a particular tax year are

not challenges to his underlying tax liability.[10]  The

consequence here is that we review the Appeals officer's

determination for abuse of discretion:

---

[9] Another vocabulary problem is that "credit" can mean two different things in tax law.  It can mean amounts subtracted from the computation of tax otherwise owed, rather than (as with deductions) from the amount of income on which the tax is computed.  But it can also mean the reduction in unpaid liability that occurs when a taxpayer pays his tax and his account is "credited."  The parties, and sometimes our own cases, don't always make this distinction clear.

[10] We also carefully distinguish cases like <u>Perkins</u> and <u>Landry v. Commissioner</u>, 116 T.C. 60 (2001).  In cases like these, taxpayers argue that they are due refunds from prior years that should be credited to their unpaid tax in a later year.  Overpayments from one tax year can, under section 6513(d) and its regulations, be a credit toward the tax liability of the following year.  We rule on such arguments under the Code provisions governing claims for refund, see secs. 6511, 6513, and treat them as raising a question of liability for that following tax year.  See <u>Landry</u>, 116 T.C. at 62-63.  If that's an argument the Kovaceviches are making, section 6330(c)(2)(B) bars them from making it successfully because they already had a chance to contest their liability when they got a notice of deficiency.

> Where the validity of the tax liability was properly at
> issue in the hearing . . . The amount of the tax liability
> will in such cases be reviewed by the appropriate court on a
> de novo basis. Where the validity of the tax liability is
> not properly part of the appeal, the taxpayer may challenge
> the determination of the appeals officer for abuse of
> discretion. H. Conf. Rept. 105-599, at 266 (1998).

See also, e.g., Sego v. Commissioner, 114 T.C. at 611; Goza v. Commissioner, 114 T.C. at 182-83. This means that we look to see if the Appeals officer's decision was grounded on an error of law or rested on a clearly erroneous finding of fact, or whether he applied the correct law to fact findings that weren't clearly erroneous but ruled in an irrational manner. Indus. Investors v. Commissioner, T.C. Memo. 2007-93 (citing United States v. Sherburne, 249 F.3d 1121, 1125-26 (9th Cir. 2001)); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402-03 (1990).

Our agreement with the Commissioner on this point, though, may end up causing him a problem--it means that the Appeals officer committed an error of law when she labeled the check-crediting argument a challenge to the underlying liability. This means that she necessarily abused her discretion, unless her error was harmless. See Perkins, 129 T.C. at 70-71. The Commissioner points out to us two paths to a finding of harmlessness: that the Kovaceviches are barred from raising the check-crediting issue by section 6330(c)(4) and the doctrine of *res judicata*, and that they would still lose because the IRS did

correctly credit the checks against liabilities other than their unpaid 1992 individual income-tax liability.

C.   Section 6330(c)(4) and *Res Judicata*

Section 6330(c)(4) precludes a taxpayer from raising in a CDP hearing any "issue" that "was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding."  The Kovaceviches raised--and we did consider--the issue of check 3747 during their deficiency trial.  Kovacevich v. Commissioner, No. 12815-99 (T.C. Jan. 15, 2004) (decision).  Therefore, the Code itself would preclude us from addressing this check during the collections stage.  But Rule 39 requires a party to specially plead "any matter constituting an avoidance or affirmative defense, including res judicata."  Whether preclusion under section 6330(c)(4) is "a matter" that must be pleaded as an affirmative defense is unclear.  If it is, then there's a problem, because the Commissioner didn't raise the issue in his answer.  But we'll just note the problem as one we'll save for a later case--it would affect at most only one of the disputed checks.

The Commissioner next argues that the Kovaceviches could have raised the proper crediting of these checks in previous litigation, even though they didn't.  This is an argument about *res judicata*.  But applying *res judicata* in this case turns out to be quite complicated.  The first problem for the Commissioner

is that, as with his section 6330(c)(4) argument, he raised it for the first time in his posttrial brief. *Res judicata* is definitely an affirmative defense, yet it is nowhere in the Commissioner's answer and didn't come up at trial.[11]  A second problem is that it's not at all clear that questions of whether the IRS credited particular checks correctly have to be raised in a deficiency case.[12]  And even in the Kovaceviches' 1992 deficiency case only one check, number 3747, was actually mentioned in the computations, when we found that it was a check "credited to previous years for employment taxes owed by the corporation's liabilities relating to 1988, 1989, and 1990." Kovacevich v. Commissioner, No. 12815-99 (T.C. Jan. 15, 2004) (decision).  (The Kovaceviches presumably could have also raised the crediting of check 7438, because they wrote it in 1995.)

The check numbered 10161 was written in September 2003, after the trial but before entry of the Rule 155 computations, and the last two checks, 7461 and 10376, were written after we had already entered decision.  So it's not at all clear that questions about the proper crediting of particular payments are

---

[11] Instead, the Commissioner pleaded section 6330(c)(2)(B) as an affirmative defense in his answer.

[12] The application of payments is almost always part of overpayment cases where the final decision document includes a statement of account showing assessments and payments.  See sec. 6512(b)(3); Internal Revenue Manual pt. 35.8.6.3.1.3 (Aug. 11, 2004).

part of the same "claim," and so precluded by *res judicata*, as is the proper computation of tax liability. It is clear that in the circumstances of this case--where at least some of the checks could not have been brought to our attention because they hadn't been written yet--we would still need to proceed to the question of whether the IRS properly credited them. So we will sidestep this question too.

That leaves us with the decisive question of whether the IRS properly credited the disputed checks. The Kovaceviches make two arguments. The first is that the checks were credited to the wrong tax years. The second is that overpayments of employment taxes for some years should have been carried over to reduce their 1992 income-tax liability.

II. Crediting of the Checks at Issue Here

A taxpayer who makes a voluntary payment may designate which liability he or she wishes to pay. Tull v. United States, 69 F.3d 394, 396 (9th Cir. 1995); see also Rev. Proc. 2002-26, 2002-1 C.B. 746. We find that all the Kovaceviches' payments were voluntary, so their designation controls.

Check 3747, for $21,985.48, was written on the account of Robert E. Kovacevich, P.S., on March 30, 1991. The check bears the employer identification number of Robert E. Kovacevich, P.S., and directs that it should be credited for "Employment tax 3-31-88-9/30/88, 1989, 3/31/89-9/30/89, 3/31/90, 9/30/90." The

Appeals officer did not research this check, and the Commissioner entered no transcripts for tax years before 1992 into evidence at trial. However, the Appeals officer wrote in the Notice of Determination that this check pertained to "years outside the CDP." This finding was not an abuse of discretion; it was not clear error for her to determine that this check was meant to pay for years before 1992 and was meant to reduce the firm's own unpaid tax liabilities. And, if it is up to us to make a finding of our own on the basis of the trial record, we find it more likely than not that the check was credited as the Kovaceviches wished.

Check number 7438, for $22,583.20, was written on the account of Robert E. Kovacevich, P.S., on September 30, 1995. It reads "941 taxes 3/31/92-12/31/92; 941 taxes 3/31/93-12/31/93. For payment of 941 taxes only no interest or penalties." This check also has the firm's employer identification number on it. The back of this check bears an obscured document locator number (DLN)[13] which reads in part "291172772." This matches an October 4, 1995 IRS computer-transcript entry labeled "payment" for Western Management's tax period ending March 1992. This makes it highly likely that check 7438 is the very same check that

---

[13] The IRS assigns a DLN to each document it processes. IRS employees can then refer to the DLN to find out which taxpayer sent the document and where the document is stored.

triggered the refund litigation in the Court of Federal Claims.
As the opinion in that case states:

> On September 30, 1995, a check in the amount of $22,530.20
> from account no. *** [XXXXX-XXX] was paid to the Internal
> Revenue Service.  *** The check was paid on amounts billed
> by the IRS for alleged FICA, FUTA, and other employment
> taxes solely on a dispute of one worker Robert Kovacevich
> for the calendar year 1992.

Western Management, 45 Fed. Cl. at 548.  This reading is con-
firmed by the 1992 Western Management transcript, which indicates
that the Kovaceviches began refund litigation for that year in
May 1997.  The transcript shows that Western Management got a
refund of $3,961.04 for 1992; this corresponds to the amount of
check 7438 less the additional tax assessed plus interest and
penalties.[14]   We therefore find that the Appeals officer commit-
ted no clear error in concluding that the IRS did credit this
check according to the taxpayer's wishes; all the facts strongly
indicate it was meant to pay the firm's tax debt, not the Kovace-
viches'.

The Kovaceviches wrote check 10161 September 29, 2003.  They
directed that this $7,682 check be put toward "Payment of employ-
ment tax Western Management Inc.  For 6672 penalty to withholding
tax only.  No interest or penalty payment.  Directed payment for
1994 taxes of Robert E. Kovacevich classified as employee."

---

[14] There is a discrepancy of $94.04 between the check and
the transcript entry, but the parties did not address it.  We
find it to be immaterial.

Analyzing the crediting of this check is complicated; although Western Management's employer identification number is handwritten at the top, Robert's Social Security number and the words "1994 tax" are typed at the bottom. This makes the job of discerning the Kovaceviches' intended crediting very confusing. On the one hand, they designated it for payment of the "6672 penalty." On the other, it also has Robert's Social Security number typed on the check and a second note directing that it should be put toward "1994 taxes of Robert E. Kovacevich." This suggests it should pay his tax. If we had a third hand, we could also point out that it's designated for "payment of employment tax Western Management Inc.," indicating payment of 941 taxes, reinforced by the handwritten employer identification number on the check.

The Commissioner apparently resolved this issue by crediting the checks to Western Management's account. The DLN on the back of the check is 29117282040043; this matches an October 3, 2003 entry on Western Management's account transcript showing a $1,920 payment for the firm's first quarter 1994 taxes. The Appeals officer found that the IRS had credited the remainder of the check to the rest of Western Management's 1994 tax year. The following payment entries appear in the transcripts:

| Period | Payment Amount | Payment Date |
|--------|----------------|--------------|
| 3/31/94 | $1,920.50 | 10/3/03 |
| 6/30/94 | $1,920.50 | 10/3/03 |
| 9/30/94 | $1,920.50 | 10/3/03 |
| 12/31/94 | $1,920.50 | 10/3/03 |

Based on the evidence, the Appeals officer did not abuse her discretion in finding that the check was credited across all four quarters of Western Management's 1994 tax year. It was also not clear error for her to find that this accorded with the taxpayer's confusing directions--those directions as stated on the check could have supported any one of three different conclusions as to their intentions. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). And, of course, none of the three plausible interpretations of the ambiguous directions has anything at all to do with the Kovaceviches' 1992 income tax.

Check 10376 was for $7,514.40 and dated April 28, 2004. It was drawn from the personal account of Robert and Yvonne Kovacevich, but written on it is "Payment of employment tax ONLY Western Management Inc. Directed payment for TAX ONLY 1994 for Robert E. Kovacevich classified as employee." The only identification number on the check is Western Management's. And that is what we find was done: On Western Management's transcript for March 1994, there is an entry for a "subsequent payment" of

$7,514.40.  Although some of the numbers on the back of the check are obscured, the digits "31105004" are clear and match the DLN on the transcript corresponding to the May 3, 2004 payment.  The Appeals officer didn't analyze where this check went--remember, it was the check the Kovaceviches introduced only at trial.  But it's plain to us that when they wrote it, the Kovaceviches designated the check to pay 1994 taxes.  The 1994 tax quarters for Western Management do not overlap with the Kovaceviches' 1992 individual tax year, so we find that the Commissioner properly did not credit it to the Kovaceviches' individual account.

The Appeals officer addressed the last of these five checks, number 641 for $8,276.50, by verifying that it had been applied to Western Management's deficiency for the first quarter of 1995.  The Kovaceviches wrote this on November 23, 2004, directed that it should be put toward the "6672 penalty on 3/27/1995," and wrote Robert Kovacevich's Social Security number on it.  The Western Management transcript for the period ending March 31, 1995 has an entry on November 23, 2004 for a "subsequent payment - trust fund" in the amount of $8,276.50.  The number printed on the back of the check again matches the "DLN" indicated on Western Management's transcript.

The Kovaceviches plausibly argue that they wanted this payment applied to Robert's 1995 trust-fund-recovery penalty under section 6672, not to Western Management's 941 taxes for

1995. But their argument misses the point--this case is about the Kovaceviches' unpaid 1992 tax liability. We simply lack jurisdiction over 1995 taxes when they do not affect the tax year covered by the notice of determination in front of us. Freije, 125 T.C. at 25.

Robert even admitted at trial that he wanted this applied to the 1995 section 6672 penalty, but stressed that he also asked the Appeals officer to credit it to his 1992 income tax deficiency. The Kovaceviches made no coherent argument as to why this amount should be applied to both the 1995 penalty and their 1992 income tax. The only possible question is whether the check should have been applied to cover 941 taxes or 6672 penalties for 1995, but 1995 isn't the year in front of us and doesn't directly affect the year that is. Any mistake the Appeals officer made in finding that the check was credited according to the Kovaceviches' wishes is harmless error. We also find no support for Robert's somewhat puzzling general assertion that the payments should be applied toward both Western Management's liability and to his individual liability. Section 6521 does mitigate the effect of the statute of limitations if self-employment income is recharacterized as wage income, so that self-employment taxes already paid can be credited toward the employer's liability. Robert, however, seems to think that the taxes owed by Western Management exactly equal the taxes paid by him, amounting to a

wash. This isn't the case; Robert underreported his income in 1992 by $45,000. Nobody has yet paid the taxes--either employment or income tax--on this extra income. The deficiency for 1992 also reflected a higher liability because the Commissioner denied some of the Kovaceviches' Schedule C deductions. So any error committed by the Appeals officer was doubly harmless--not only were the checks properly credited to years other than 1992, but they wouldn't have satisfied the Kovaceviches' unpaid tax liability for that year even if they had been applied to 1992.

III. Contribution Basis

The Kovaceviches briefly argue about something called "contribution basis." They believe the Commissioner overcollected employment taxes for 1988, 1989, and 1990 by applying check number 3747 to that debt, and should therefore credit the overpayments toward their 1992 deficiency.

The Kovaceviches are partly correct about the "contribution basis;" section 3121(a) exempts from wages subject to part of the FICA tax:

> that part of the remuneration which, after remuneration * * * equal to the contribution and benefit base (as determined under section 230 of the Social Security Act) with respect to employment has been paid to an individual by an employer during the calendar year with respect to which such contribution and benefit base is effective, is paid to such individual by such employer during such calendar year. * * *

We sidestep the problem (and the need to parse the passage just quoted): The short answer to the Kovaceviches' argument is

that they didn't provide any evidence that they met the require-
ments for this exemption. They didn't enter into evidence their
tax returns or other evidence of Robert's income for 1988-90.
They also didn't tell us (or the Appeals officer) specific am-
ounts that should be credited toward 1992 or how those credits
reduce the deficiency. This attack on the notice of determina-
tion must also fail.

IV.  Social Security Payments

The Kovaceviches finally urge us to find an abuse of discre-
tion in the Appeals officer's refusal to send information about
their additional income to the Social Security Administration.
Although this seems like a strange line of argument, it has real-
life effects on the Kovaceviches. They argue that if the Commis-
sioner told the SSA about the additional 1992 income on which
they must now pay taxes, they could increase their monthly Social
Security payout by a small amount.

We are sympathetic to this desire to increase their retire-
ment income. But a CDP hearing is not the right forum--getting
information from the IRS to the SSA about whether Social Security
taxes have been paid is not an issue related to an unpaid tax and

is not related to a levy.  It is thus not an issue that may be raised at a CDP hearing.  See sec. 6330(c)(2).[15]

Decision will be entered for respondent.

---

[15] Since Western Management's 1992 employment-tax liability is still pending in Claims Court, Western Management may not yet have computations sufficient to put together a revised Form W-2. 42 U.S.C. section 432 also requires the Secretary of the Treasury to make such returns available to the Commissioner of Social Security.  See also Corkrey v. Commissioner, 115 T.C. 366 (2000). This may be something the Kovaceviches can work on with the SSA if and when they get a revised W-2 from their firm.