Holmes, J., dissenting: Imagine that a check arrives at the IRS from John Green with a letter that says: “This check is to be applied to my tax bill for 2013. Also, please credit my friend Joe Black’s account for the same amount. He gave me the money that let me write this check and I’d like him to benefit as well.” If things work as they should at the Service, Green’s account should be credited; and the suggestion that the same check should be credited for Joe Black’s account would cause some tittering, or maybe just a puzzled look on the face of the IRS employee opening the envelope. And that’s more or less what happened here. Tryco sent in a few dozen checks together with letters saying to please pay the" company’s tax bill and designated them as well as payments of “withheld income taxes” for one or the other of the Dixons. The IRS credited Tryco’s giant unpaid employer-tax liability, but did not reduce the Dixons’ large income-tax liability. The majority is quite right that the Dixons don’t get a credit under section 31 for payments Tryco made that were not “actually withheld at the source.” But what the majority gets wrong is the way the crediting scheme works. Employers get a credit under section 3402(d) for employee payments whenever they’re made, but employees get a credit for employer payments only when those payments are “actually * * * withheld at the source.” Sec. 1.31-l(a), Income Tax Regs. Here, we all agree that the payments were not actually withheld at the source. That should be good enough to answer the question before us, because the plain language of the Code and regulations does not provide the Dixons with a credit. Dissatisfied with this plain language, the majority sets up its own forge and mints a new tax credit nowhere to be found in the Code. I must respectfully dissent, because this Court doesn’t have the power to replace a clear and explicit crediting scheme with one that we deem “fair”. I. Had the Dixons sent the money in themselves and told the Commissioner to apply the payments toward their own income-tax liability, they’d have a credit for their payments (but might still be on the hook for leftover penalties or interest), and so would Tryco, under section 3402(d). But the Dixons instead sent money to Tryco for Tryco to send to the IRS. Tryco sent that money to the IRS voluntarily and told the Commissioner to apply it towards Tryco’s own unpaid employment taxes. It’s what the Dixons and Tryco told us they intended to do, and it’s what they actually did. The Commissioner then obeyed those instructions. What colors these cases, and makes the Dixons look sympathetic, is that the money Tryco paid is money that the Dixons contributed to the corporation after they took out a home-equity loan for almost a half-million dollars. It was this money that they sent to Tryco, and had Tryco pay over to the IRS in December 1999. The letters that accompanied the payment told the IRS exactly where to put it: towards “[Form] 941 taxes of the corporation * * * to be applied to the withheld income taxes” of James R. Dixon or Sharon Dixon for each quarter of the 1992 through 1995 tax years. The “memo” lines on the checks themselves said “Designated Payment of 941 Taxes” for each Dixon. The letter that Tryco sent along with the June 2000 payment said something similar: It was a “payment of [Form] 941 taxes of the corporation for calendar quarter 9504,[1] and which represents the withheld income taxes of employee James R. Dixon and employee Sharon Dixon.” The Dixons couldn’t have been much more clear — Form 941 is the Employer’s Quarterly Federal Tax Return, and they told the IRS to pay the taxes “of the corporation,” the same entity that formally sent along the payment. The Dixons did ask the IRS to apply the payments to the portion of Tryco’s employment-tax bill that was attributable to Tryco’s failure to withhold taxes from James’s and Sharon’s wages. But that isn’t the same thing as asking the IRS to apply the payments directly towards the Dixons’ individual income-tax liabilities, because Tryco was asking the IRS to apply the payments toward a specific part of Tryco’s tax bill. We even have testimony from Larry Campagna, the Dixons’ tax attorney, saying that the Dixons knew that they had a choice — pay their own taxes directly, or have Tryco pay its own taxes, specifically those attributable to underwith-holding for the Dixons. And he explained why the Dixons decided to pay Tryco’s liability rather than their own. Campagna stated that he was afraid that had Mr. and Mrs. Dixon remitted the income taxes directly for their account, then the 941 liability for Tryco would not have been reduced by the payment, and the Government would have been asking for a double collection of the same money on the income tax side and the employment tax side, [2] There was something else here: Had the Dixons simply sent the money in and told the IRS to apply the payments towards their own income-tax liabilities, they still would’ve been on the hook for all of the interest and penalties that had accrued between the due dates of the original returns— April 1993, 1994, and 1995 — and the dates that they finally paid up in December 1999 and June 2000. See sec. 6622(a). By instead contributing the money to Tryco — their employer — and then having Tryco pay it as employment tax, the Dixons hoped that the IRS would treat the payments as the IRS treats normal withholding payments, which would then erase many years of interest and penalties.[3] That’s why they chose the indirect route.[4] We also have the Dixons’ briefs, which say that the Dixons gave “detailed written instructions (on the checks and in the cover letters),” that “unequivocally provided” for how the IRS was to apply their payments, and also say “[t]he IRS did not have to guess how Tryco wanted the payments applied.” They reiterate that those instructions said that the payments were for “Form 941 taxes of the corporation for all quarters during 1992-1995,” specifically those attributable to the withheld income taxes of the Dixons. So we know what the Dixons actually asked for in their letters — for the IRS to apply the payments towards Tryco’s employment taxes — and we know that’s exactly what they meant to do, because their lawyer explained why, and their briefs hammered it home. Nevertheless, the majority actually appears to come to two conflicting conclusions about what Tryco asked the IRS to do with the money. It argues both that the Commissioner should have reduced the Dixons’ income-tax debt to the extent that Tryco paid its own employer-tax debt; and that Tryco’s payment of that debt was also creditable to the Dixons as payment of restitution. I’ll address each in turn. II. I agree with the starting point of the majority’s first argument — there is overwhelming authority for the proposition that a taxpayer who submits a voluntary payment may direct which of his taxes that payment should be credited to. I also don’t doubt that one person can pay another person’s taxes. But what I can’t agree to is the majority’s combination of these two simple propositions to allow a taxpayer to designate -that its payment should reduce both its own tax debt and the debt of a third party. And remember as well that the Dixons’ lawyer wrote the IRS, after these payments were made, that he wanted them rejiggered to be for slightly different amounts and periods. But the majority clearly errs in finding that the IRS did not do exactly what Tryco asked it to. According to the IRS transcripts in the record, the Commissioner applied the payments to Tryco’s employment-tax liability, and gave the Dixons a section 31 credit for their income-tax liability. (The transcripts are typically opaque about this — they don’t say anything about section 31. But they do show that the Commissioner abated interest that accrued between the original due dates of the return and the dates of the later payments, and a direct credit to the Dixons’ income taxes wouldn’t have reduced their outstanding interest.[5]) He applied the payment exactly as Tryco asked — toward the outstanding employment taxes of the corporation, specifically those attributable to the Dixons. If he hadn’t, the Dixons wouldn’t have ever gotten that mistaken section 31 credit. The majority defends at length — and with copious citations — Tryco’s right to direct the IRS to apply its voluntary payment towards a specific portion of its own tax liability. There’s nothing wrong with this — a company’s employer tax has long been seen by the courts and the Commissioner to be the aggregation of numerous quarters of tax for numerous employees. It’s convenient to pay it all in one lump sum every so often, but an employer’s total employer-tax liability is very much the sum of a large number of smaller liabilities. But assuming that Tryco’s payment was properly applied to its own employment-tax bill, and specifically that portion that should’ve been withheld from the Dixons, the Dixons still can’t point to a single credit under current law that would cause Tryco’s payment to erase their own income-tax liability.[6] The reason is that employment taxes and income taxes are welded together by detailed and specific language in the Code and regulations. Section 3403 says “[t]he employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter [chapter 24, sections 3401-3406], and shall not be liable to any person for the amount of any such payment.” Section 31.3403-1, Employment Tax Regs., emphasizes that it is employers which are “required to deduct and withhold the tax under section 3402” and which are liable “for the payment of such tax whether or not it is collected from the employee by the employer.” (Emphasis added.) The employer’s tax liability under section 3403 is, in other words, independent of the employee’s liability under section 1 and section 61(a)(1) to pay tax on the same wages. But what happens if the employee pays the tax? The answer is that the employer is off the hook — section 3402(d) provides: If the employer, in violation of the provisions of this chapter, fails to deduct and withhold the tax under this chapter, and thereafter the tax against which such tax may be credited is paid, the tax so required to be deducted and withheld shall not be collected from the employer * * * [7] See also W. Mgmt., Inc. v. Commissioner, 176 Fed. Appx. 778, 782 (9th Cir. 2006) (remanding case for us to consider in the first instance whether section 3402(d) provided employer with any relief from collection of income taxes paid by employee, and if so, to compute reduction in employer’s deficiency), aff’g in part, remanding in part T.C. Memo. 2003-162. The Code doesn’t have a section like 3402(d) that could rescue employees.[8] Without one, an employee doesn’t get a credit on his income-tax liability just by proving that the employer later paid the tax it failed to withhold.[9] The Code does have section 31, but it’s limited — an employee’s right to a withholding credit depends on whether the tax has “actually been withheld at the source” by the employer. Sec. 1.31— 1(a), Income Tax Regs. We all agree that wasn’t done here. Which should have meant that we all agree that the Dixons don’t meet the requirements to get the only credit that the Code provides in this situation. Not to be discouraged by the lack of any actual credit in the Code to which the Dixons are entitled, the majority makes one up. As support for this new judge-made credit, the majority gives three examples of other withholding obligations — sections 3102, 3405, and 3406 — and says that “[i]n none of these contexts does the Code explicitly provide that * * * [a payee] will receive, toward her principal liability, a credit for payments the payor makes toward its derivative liability.” See op. Ct. p. 191. If this were a gap in the Code, the majority might have a point. But a closer look at the text shows that there are no gaps: Let’s start with sections 3405 and 3406. The Code does “explicitly provide” credit for withholding under these sections, and it is in none other than the very same section 31 that’s at issue in these cases. Section 31(a)(1) creates a credit for payees for amounts that payors “withheld as tax under chapter 24.” Sections 3405 and 3406 — just like section 3402— are all a part of chapter 24, which means that section 3405 and 3406 payees are also subject to all of the same pesky section 31 requirements. But there’s no gap in the Code here— those payees should, like employees, get credits only when portions of the payments or wages they receive are “actually withheld at the source.” Section 3102, which involves the FICA (or Social Security) tax and which the majority also cites, works a bit differently. For most taxpayers, the primary obligation to collect and pay this tax is on the employer. See sec. 3102(a) (tax collected from employer); sec. 31.3102-l(d), Employment Tax Regs, (employer “liable for the employee tax * * * whether or not it is collected from the employee”). The regulation makes clear that the employee is also liable for the tax only “[u]ntil collected from [the employer].” Sec. 31.3102-l(d), Employment Tax Regs. Thus, the majority is correct that the FICA tax doesn’t work on a formal crediting system like the income tax, but only because, instead of a credit, there is a reduction in the amount of the liability itself.[10] As the employer pays, the employee’s liability as defined by the Code and regulations correspondingly shrinks. The majority’s last analogy is to the trust fund recovery penalty imposed by section 6672. It claims this as yet another situation where, even though the Code doesn’t require it, the IRS doesn’t collect tax arising out of the same event from more than one person. Several individuals may become secondarily liable, under section 6672, for failure to discharge the same section 3402 employer withholding tax liability. Every circuit court — including the circuit court to which these cases would likely be appealed — has concluded that this penalty is one that creates a joint and several liability among responsible parties. See Brown v. United States, 591 F.2d 1136, 1142 (5th Cir. 1979). While it is true that the IRS says it follows “a policy” of not collecting more than the total sum due it from all those found to be responsible parties, this “policy” simply restates a firm and deeply rooted background priniciple of common law; i.e., that against parties jointly and severally liable, “a partial satisfaction of one judgment will not prevent obtaining or enforcing another, although it is everywhere agreed that the amount received must be credited pro tanto against the amount to be collected.” William L. Prosser & W. Page Keeton, Law of Torts 331 (5th ed. 1984); 2 Restatement, Judgments 2d, sec. 50(2), cmt. c. (1982) (same); 1 Restatement, Torts 3d, sec. 25(b) (2000) (same). Tax law may be the most florid and convoluted example of the displacement of the common law by statute and regulation, but even it can’t completely overgrow the general legal principles that connect all the cozy specialized gardens of the law. So, if the Commissioner were ever to assert a right to collect a joint and several debt more than once, he couldn’t do so without a change in the Code or regulations.[11] But the Dixons’ cases do not feature an IRS “policy” and are not about joint and several liability; they are about separate and distinct employer (secondary) and employee (primary) liabilities: Tryco’s section 3402 employer tax liability and the Dixons’ section 1 and section 61 income-tax liability. Couples who file joint returns create joint and several liability; they might be startled to learn that we today are forcing them into such an intimate relationship with their employers. And, absent joint and several liability, I know of no Code section, regulation, or decided case that would preclude the Commissioner from pursuing an employee for unpaid income tax with respect to the same wages on which an employer owes employer taxes. This is just not an area where there is any room left for judge-made law. The Code and regulations create an intricate crediting scheme for employment and income taxes. Employers get a credit for any employee payments, but employees get a credit only when those payments have “actually been withheld at the source.” Sec. 1.31-l(a), Income Tax Regs. Withholding credits are usually an excellent deal for employees — not only do they reduce an employee’s net tax bill, but the Code treats those taxes “as a credit for the taxable year beginning in” the calendar year when they were withheld. Sec. 31(a)(2). If we were to hold that the Dixons were entitled to a credit under section 31 on their 1992-95 taxes — that is, that those amounts were “actually * * * withheld at the source” — even though Tryco made the payments only years later, we would be allowing them to eliminate (because of the retroactive crediting of that payment) liability for interest and additions to tax and penalties that the Code computes on the basis of the time an employee’s tax has gone unpaid — despite the fact that the tax did in fact go unpaid for many years. The Dixons knew about that trick when they chose to structure their payment through Tryco for Tryco’s own taxes, see supra notes 3 and 4 and accompanying text, and I certainly wouldn’t blame them or their lawyer for trying — these are cases of first impression. And it sounds kind of plausible because of all that caselaw and IRS guidance from situations where a taxpayer is allowed to choose which of his own liabilities his money pays down. But there’s just nothing in the Code to support an extension of a general rule that “taxpayers can designate liabilities” to situations where the liability involved is both their own and another’s. III. After defending at length Tryco’s right to designate the payments toward its own employment-tax bill relating to a specific employee, the majority puzzlingly also finds that the Dixons actually provided “explicit instructions” that the funds were for “payment of * * * [the Dixons*] 1992-95 income tax liabilities.” See op. Ct. p. 194. The majority hangs its recharacterization of Tryco’s payments on the restitution language in the Dixons’ February 7, 2000 plea agreements. In those agreements, the Dixons acknowledged that they “may be required to make full restitution for the losses sustained by the Internal Revenue Service as a result of the offenses of conviction.”[12] But remember that Tryco had sent in the bulk of the payments— $571,917 — back in December 1999 to reduce its employer-tax debt. This language in the Dixons’ later plea agreement can be nothing more than their acknowledgment that they might have to pay their own tax bill after they had already made Tryco pay down some of its own. Consider how odd this makes this part of the majority’s holding — it’s holding that the Commissioner abused his discretion by not ignoring the clear instructions Tryco actually included with the payment, because he should’ve known what Tryco actually wanted — if only he could’ve peeked into the future at a document from a third party (i.e., the Dixons) that was not yet in existence when Tryco sent in the bulk of its payments.[13] It’s bad enough to require the Commissioner’s clerks to be mind readers, but with this holding we’re requiring them to build time machines too. IV. The majority glosses over some of the other tax consequences of its decision today. The Dixons had to contribute $602,119 to Tryco because Tryco wasn’t doing much business anymore. The Dixons were controlling shareholders, and their capital contributions would have increased their bases in the Tryco stock. See secs. 351(a) (applies to controlling shareholder), 358(a)(1), 1012; see also sec. 1016(a); Commissioner v. Fink, 483 U.S. 89, 94 (1987) (same for noncontrol-ling shareholders); Love v. Commissioner, T.C. Memo. 2012-166, 2012 WL 2135598, at *9; sec. 1.1016-2(a), Income Tax Regs. Tryco’s employment-tax burden is smaller to the extent of the payments that it made, but it is still so large that the company stock may still be worthless, manufacturing a tidy loss for the Dixons. When the Dixons eventually abandon or sell Tryco, they’ll get a bigger loss than they otherwise would have because of their increased bases. And we shouldn’t forget that Tryco was the Dixons’ employer. As the majority acknowledges, see op. Ct. note 17, employers that pay their employees’ bills are treated as if they were paying wages instead, see Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929). But Tryco’s payments were in 1999 and 2000, meaning the Dixons have untaxed income for 1999 and 2000, years for which assessment is now barred by the statute of limitations (assuming that the Dixons began filing their tax returns on time). We also shouldn’t forget that paying wages — this time in the form of paying tax bills — also comes with its own withholding tax obligations for Tryco under section 3403, which it, once again, won’t have fulfilled. V. If the Dixons wanted to pay their own tax liability, they could have and should have sent the checks to the IRS directly, with a letter stating that the payments were for their own income-tax liability. That should have created a credit for Tryco under section 3402(d). Alternatively, the Dixons could have used Tryco as a mere agent to pay their own income-tax liability. What they could have gained from sending the money through their corporation first is unclear, but they’d still have their own tax bill wiped out, and Tryco’s tax bill would be reduced an equal amount under section 3402(d). They’d just need to be clear about what debt they were trying to pay, and the IRS would obey. The Dixons did what they did because they were swinging for the fences— they wanted to reduce Tryco’s employment-tax bill, reduce their own income-tax liabilities, bump up their bases in probably worthless Tryco stock, and use section 31 to erase many years of penalties and interest. I don’t blame them for trying — the law was, and after today, will remain, unclear. I do also acknowledge that in situations like this one, the result I’m advocating may seem harsh. But Congress in its wisdom created an asymmetric crediting scheme. If the Dixons had paid their tax debt directly, they would have created a credit for Tryco under section 3402(d) without qualification. But the reverse isn’t true; even though Tryco paid its tax debt with the Dixons’ capital contribution, it can’t create a credit for the Dixons because its payment was late. I do note that the money that the Dixons contributed to Tryco, and that Tryco then paid over, does reduce the giant employment and withholding tax debt that Tryco owes. (And that, if the Dixons were ever held to be responsible parties for the Original nonpayment of Tryco’s taxes, would reduce that part of their debt to the government.) That may not be fair, or even logical, but it is unambiguously what the Dixons asked the IRS to do and what the unambiguous language of the Code requires here. This Court doesn’t have the power to rewrite it or the unbridled discretion to do whatever we deem “fair”. I must, respectfully, dissent. Halpern and Buch, JJ., agree with this dissent. In IRS numerology, 9504 means the fourth quarter of tax year 1995. 2 That statement implies a misunderstanding of section 3402(d), which, by giving Tryco a credit for the Dixons’ payment of their own taxes, would have prevented “double collection” of the remitted amount. Section 31(a)(1) provides a credit to employees against their income tax obligation with respect to their wages if that tax is “deducted and withheld at the source,” even if their employer failed to remit it to the government. Sec. 1.31-l(a), Income Tax Regs. That “amount so withheld during any calendar year shall be allowed as a credit for the taxable year beginning in such calendar year.” Sec. 31(a)(2). Thus, the effect of the Dixons’ position would let Tryco’s late payment of the withholding tax not only satisfy their income-tax debt, but also cancel the portion of that debt that consisted of compounded interest. Campagna testified that “I don’t think that I was concerned about the interest.” As the trier of fact in these cases, I did not find this particular part of his testimony credible. The IRS transcripts show that the IRS finally got around to crediting the Dixons’ accounts in April or May 2003. By that point over $530,000 of interest had accrued — almost 90% of the original tax reflected on the transcripts. The Dixons’ transcripts also show that the Commissioner later realized his mistake and took the credits and abatements away. The Dixons need a credit under the Code because they want credit for an amount paid toward another taxpayer’s — Tryco’s—tax bill. They wouldn’t need a Code-based credit if they had sent in the payments toward their own tax bill. This bit of confusion comes up because “credit” can mean two different things in tax law. It can mean amounts subtracted from the amount of tax otherwise owed (as is the case here), or it can mean the reduction in unpaid liability that occurs when a taxpayer pays his own tax and his account is “credited.” See Kovacevich v. Commissioner, T.C. Memo. 2009-160, 2009 WL 1916351, at *5 n.9. 7 Section 3402(d) anticipates the concern about double collection of the same tax that we expressed in Whalen v. Commissioner, T.C. Memo. 2009-37, 2009 WL 383019, at *3, where we suggested (in what is probably dicta) that an employer’s actual payment to the IRS of tax that the employer should have withheld “could plausibly be characterized as withholding tax under chapter 24 with a corresponding section 31 credit being allowed to a proper recipient for an appropriate year.” Section 3402(d) tells us that, to the contrary, the credit applies under the reverse circumstances, i.e., the employer receives a credit for the employee’s actual payment of tax that the employer should have withheld. But it nonetheless remains true that the employer’s liability under sections 3402(a) and 3403 for withholding taxes is separate and distinct from the employee’s liability for income taxes under section 61. Congress knows how to help employees when it wants to. Section 4999(c) requires an employer who pays the 20% excise tax on excess golden-parachute payments to treat it as additional income-tax withholding. That assures the employee of a credit under section 31(a) and, in effect, keeps the Commissioner from collecting twice. Section 3402(d) may, as a practical matter, discourage the Commissioner in some cases from pursuing the employee for taxes he’s already collected from the employer, but if it happens the Commissioner will abate the employer’s taxes administratively. See Internal Revenue Manual pt. 4.23.8.4.2. (But, again, the Code makes this asymmetrical. There is no similar provision that lets an employee recoup payments that he’s made when his employer later makes payments toward the same liability.) Congress did put something of a derivative liability for employers of high-wage earners into the Code in enacting a higher tax rate to help fund Obamacare. The Code now makes an employee liable for this higher FICA tax “[t]o the extent that the amount of any tax imposed by section 3101(b)(2) is not collected by the employer.” Sec. 3102(f)(2) (added by the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, sec. 9015(a)(2), 124 Stat. at 871 (2010)). But once an employee pays the tax, the Code expressly provides that “the tax * * * shall not be collected from the employer.” Sec. 3102(f)(3). Courts certainly acknowledge that delays in collection, complex statutes of limitation, and the possibility of taxpayers’ bringing a statutory refund suit mean that the Commissioner isn’t trying to collect twice until he’s actually established his right to retain the funds that he’s collected. See USLIFE Title Ins. Co. v. United States, 784 F.2d 1238, 1244-45 (5th Cir. 1986) (carefully explaining the need for a right to retain funds collected). This is almost certainly form language-“the fact that the court may order the defendant to pay restitution” should be “included in [the] paragraph setting out [a] defendant’s awareness of possible punishment.” See United States Attorneys’ Manual, Tax Resource Manual 19 n.2, available at http://www.justice.gov/usao/eousa/foia_reading_room/usam/title6/ tax00019.htm (last visited July 8, 2013). In the actual judgments entered after the District Court accepted the plea deals, the boxes marked “restitution” are left unchecked. The Dixons submitted their final $30,202 payment on June 1, 2000, about four months after they signed the plea agreements. Nevertheless, the Commissioner shouldn’t be expected to disregard a taxpayer’s specific instructions in favor of ambiguous language in a document belonging to a third party. The same point is true of the Dixons’ effort to get the Commissioner to rejigger crediting of the payments after Tryco had sent them in. The Dixons asked the Commissioner to reallocate money that they’d originally designated to apply to Tryco’s 1994 taxes — $17,850 to 1992; $9,116 to 1993; and $22,981 to 1995. The majority seems to let this work, too, even though there is no authority anyone has cited requiring the IRS to allow a taxpayer to later change its designation once it’s made.