151 T.C. No. 8

UNITED STATES TAX COURT

DAVID H. MELASKY AND AUDREY MELASKY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12777-12L.               Filed October 10, 2018.

R mailed Ps a notice of determination.  Ps owed significant
back taxes dating to the mid-1990s.  As payment for their more recent
taxes, Ps hand delivered a check to R and designated it for the 2009
tax year.  Four days later, and before cashing the check, R levied on
their bank account.  The check subsequently bounced when R applied
the levy proceeds to an earlier year.

<u>Held</u>:  A challenge to the proper crediting of a payment is not a
challenge to the underlying tax liability.  We therefore review Ps'
dispute as to application of payments only for abuse of discretion.

<u>Juan F. Vasquez, Jr.</u>, and <u>Renesha N. Fountain</u>, for petitioners.

<u>Susan K. Greene</u>, for respondent.

OPINION

HOLMES, Judge:  David and Audrey Melasky have had their fair share of tax troubles and have owed money to the IRS going back to their 1995 tax year. In 2011 they hand delivered a check for what they contend was the entire amount of their 2009 tax bill to the IRS.  No one at the IRS cashed it before the IRS levied the checking account on which they wrote it.  The IRS then sent them a notice of its intent to levy upon their property to collect--among even older debts--the 2009 tax bill they thought they had paid.[1]

In this Opinion we consider the question of whether we review the IRS' application of payments to a liability for abuse of discretion or *de novo*.

## Background

The Melaskys have outstanding tax liabilities for 1995, 1996, 1999, 2000-04, 2006, 2008, and 2009.  On January 27, 2011, the Melaskys walked into an IRS office with a check for $18,000.  They asked to apply it to their 2009 tax

---

[1] Taxpayers often prefer to pay more recent tax debts first, because there is a ten-year statute of limitations for most tax debts, sec. 6502; see also sec. 6503, and because tax debts older than three years generally can be discharged in bankruptcy, 11 U.S.C. sec. 523(a)(1)(A) (2012); see 11 U.S.C. sec. 507(a)(8) (2012); Severo v. Commissioner, 129 T.C. 160, 165 (2007), aff'd, 586 F.3d 1213 (9th Cir. 2009).  All section references are to the Internal Revenue Code (Code) in effect for the relevant times.

liability. They assert that this would've paid their entire income tax liability for that year, and the IRS admits that it got this check. IRS records show that it posted the $18,000 payment to the Melaskys' 2009 tax liability on that same day. These records then show a reversal of that same amount because the check bounced. Why did it bounce? Here we have an unusual, but undisputed, fact--on January 31, the IRS sent a notice of levy to the Melaskys' bank. This notice froze their entire balance, and either that or the IRS's execution of the levy sometime after January 31 made the Melaskys' check bounce. The IRS then applied the entire balance that it got with the levy to the Melaskys' 1995 tax liability on February 28. The IRS also charged the Melaskys $360 as a penalty for writing a bad check. See sec. 6657.

On the same day the notice of levy was issued to the bank, the IRS sent the Melaskys a notice of intent to levy that listed only the years 2001, 2002, 2004, 2006, 2008, and 2009. The Melaskys asked for a CDP hearing.

The settlement officer (SO) assigned to their case reviewed IRS records and determined that the Melaskys had already received notices for tax years 1995,

1996, 1999, and 2000-04. He therefore concluded they weren't entitled to a CDP hearing for those years.[2] The Melaskys don't dispute this.

In the notice of determination the SO concluded, among other things, that the money the IRS got from the bank was procured through levy procedures and therefore was an involuntary payment that the IRS was free to apply as it wished.

The Melaskys, who were and remain Texas residents, timely filed a petition. They argue that their check was a voluntary payment when tendered and that they were free to apply it as they wished. The parties do not dispute the contents of the administrative record and cross-moved for summary judgment.

The case raises several issues. In this Opinion we address the first: What is the appropriate standard of review for questions of crediting payments?

## Discussion

We start with sections 6320 and 6330. These sections allow us to review a determination made by the IRS Appeals Office to sustain proposed liens and

---

[2] Taxpayers are entitled to only one CDP hearing under section 6330 per tax year. The IRS can send multiple notices of intent to levy for any given year, but a taxpayer's right to a CDP hearing is based on timely filing a request for the hearing based on the first notice of intent to levy that he got for that year. See sec. 301.6330-1(b)(2), Proced. & Admin. Regs. (Though note that there can be separate hearings to review proposed collection by lien. Secs. 6320(b)(2), 6330(b)(2); see also Freije v. Commissioner, 131 T.C. 1, 4 (2008), aff'd, 325 F. App'x 448 (7th Cir. 2009).)

levies.  Secs. 6320(c), 6330(d)(1).  They do not, however, specify a standard of review.  We filled this gap ourselves with an analysis of the legislative history, and held that our standard of review for CDP cases would normally be abuse of discretion.  Goza v. Commissioner, 114 T.C. 176, 181-82 (2000).  This means that we look to see if the Commissioner's decision was based on an error of law, or rested on a clearly erroneous finding of fact, or whether he ruled irrationally.  See Antioco v. Commissioner, T.C. Memo. 2013-35, at *13-*14; see also Matassarin v. Lynch, 174 F.3d 549, 563 (5th Cir. 1999) (noting "'arbitrary and capricious' review amounts to an abuse-of-discretion standard"); Flaherty v. Bryson, 850 F. Supp. 2d 38, 47 (D.D.C. 2012).  We review CDP determinations *de novo*, however, when the underlying tax liability is appropriately before us.  Goza, 114 T.C. at 182.

Both parties agree that we should review the determination for tax years 2006 and 2008 for abuse of discretion, but review the determination for tax year 2009 *de novo* because the Melaskys argue that they had no 2009 tax liability.  The Commissioner cites Landry v. Commissioner, 116 T.C. 60 (2001).  Landry was about the computation of the amount owed under the Code after taking into account overpayment credits that the taxpayer was entitled to.  The question for the Melaskys' 2009 tax year is about whether the IRS properly applied a check.  A

question about whether the IRS properly credited a payment is not a challenge to a tax liability; i.e., the amount of tax *imposed* by the Code for a particular year. It is instead a question of whether the liability remains *unpaid*. Section 6330(c)(2)(A) allows a taxpayer to raise at a CDP hearing "any relevant issue relating to the unpaid tax," whereas section 6330(c)(2)(B) says a taxpayer may challenge "the existence or amount of the *underlying tax liability*" (emphasis added) only if he didn't receive a notice of deficiency or otherwise have an opportunity to do so. See Kovacevich v. Commissioner, T.C. Memo. 2009-160, 2009 WL 1916351, at *6. We therefore hold here that the Melaskys aren't challenging their underlying liability for 2009. See also Chief Counsel Notice CC-2014-002 (May 5, 2014) (announcing similar IRS position).

Our standard of review for these specific facts is therefore abuse of discretion for all years.