T.C. Memo. 2019-162

UNITED STATES TAX COURT

ERIC SCHWARTZ, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17291-14L.                    Filed December 12, 2019.

<u>Karen J. Lapekas</u>, for petitioner.[1]

<u>Derek P. Richman</u> and <u>Daniel C. Munce</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to section 6330(d)(1) of the determinations by the Internal

Revenue Service (IRS or respondent) Appeals Office (Appeals) to sustain

_____

    [1] Ms. Lapekas represented petitioner before the Tax Court, but she did not represent him in the prior administrative proceedings.

**[*2]** proposed levies with respect to petitioner's Federal income tax liabilities for 2006, 2007, 2010, 2011, and 2012 (liabilities at issue).[2] The issue before us is whether petitioner made a timely informal refund claim pertaining to a prior year overpayment sufficient to extinguish the liabilities at issue. For the below reasons, we will remand this case to Appeals to clarify and supplement the administrative record.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts and the attached exhibits by this reference. Petitioner was a resident of Florida when the petition in this case was filed.

Petitioner's Divorce

In 2006 petitioner was party to a divorce action before the Family Division of the Circuit Court for Miami-Dade County, Florida (circuit court). The circuit court directed petitioner and his ex-spouse to make an estimated Federal tax payment of $150,000 to cover their expected 2005 Federal income tax liability. Petitioner and his ex-spouse made the payment on or about April 17, 2006.[3] They

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

[3] The credit was later allocated $75,000 to each spouse.

[*3] also filed a six-month extension request for their 2005 Federal income tax return, causing it to be due October 16, 2006.[4] However, petitioner did not file a joint or separate return by the extended deadline.

On September 17, 2007, the circuit court issued an order (September 2007 order) restricting petitioner's use of the $150,000 payment. Petitioner interpreted the September 2007 order as a bar to filing a Federal tax return until the divorce was final and/or the order was lifted.[5] Therefore, petitioner delayed filing income tax returns.

---

[4] April 15, 2006, fell on a Saturday; October 15, 2006, fell on a Sunday.

[5] The order stated in relevant part:

> 6.0 Neither party shall draw upon, utilize, or otherwise use the $150,000.00 currently held by the I.R.S. in the parties' joint names. Any tax returns filed by either party for which payment is required to the I.R.S. shall be filed contemporaneously with payment for all sums due by the individual filing the return. Any portion of the $150,000.00 returned to either party shall be placed in the escrow account at Mellon Bank created pursuant to paragraph 1.0 above. These funds shall not be removed or distributed to either party absent a Court Order or written agreement of both parties.

> \*      \*      \*      \*      \*      \*      \*

> 8.0 Any other marital funds not specifically delineated above received by either party shall be placed in the escrow account at Mellon Bank created pursuant to paragraph 1.0 above. These funds shall not be removed or distributed to either party absent a Court Order or written agreement of both parties.

**[\*4]** On December 14, 2009, the circuit court issued an amended final judgment of dissolution of marriage (December 2009 final judgment). Several postjudgment motions followed.

In October 2011, after the postjudgment motions were resolved, petitioner filed his delinquent returns for 2005, 2006, 2007, 2008, 2009, and 2010. On his 2005 return petitioner reported total tax of $45,282 and an estimated payment of $75,000. Accordingly, he claimed a refund of $29,718. On line 74 of the return petitioner specified that he wanted to apply the entire amount of the claimed refund against his 2006 estimated tax. On his 2006, 2007, and 2010 returns petitioner reported tax liabilities.[6] He did not submit payments with those returns because his claimed refund for 2005 was sufficient to cover the reported liabilities.

Respondent accepted petitioner's 2005 return as filed, assessed the reported liability, and credited the $75,000 payment against that liability. However, on April 30, 2012, respondent disallowed petitioner's claim for refund and transferred the $29,718 overpayment for 2005 to an excess collections account. Respondent did not issue petitioner a notice of disallowance pursuant to section 6532(a)(1).

---

[6] Petitioner did not have tax liabilities for 2008 and 2009.

**[\*5]**  On May 12, 2012, and July 11, 2013, respectively, petitioner timely filed his returns for 2011 and 2012.[7]  Petitioner reported a tax liability for each year. However, he did not submit payments with his returns.

Respondent assessed the liabilities at issue.  Having transferred petitioner's 2005 overpayment to an excess collections account, respondent did not credit the 2005 overpayment against the liabilities at issue.

Collection Due Process Hearing

Respondent issued a Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy) with respect to petitioner's 2006, 2007, 2010, and 2011 tax years.  Respondent later issued a separate notice of intent to levy with respect to petitioner's 2012 tax year.  Petitioner timely requested a CDP hearing in response to both notices.

In his CDP hearing requests petitioner indicated he was seeking "Other" relief and did not request any collection alternatives.  In letters attached to his CDP hearing requests, petitioner wrote:

> In December 2005 my former wife and I sold our marital residence.
> In March of 2006 * * * my wife filed for divorce and the court froze
> the marital assets.  Per [circuit] court order, the party's [sic] made an
> estimated tax liability payment to the IRS in the amount of
> $150,000.00 * * * and the parties were prevented from obtaining any

---

[7]  For those years, petitioner timely filed requests for extensions.

[*6] refund of these funds without [circuit] court order. After the Final Judgment was rendered in December of 2009, there were several subsequent motions filed, including one to determine the distribution of the advanced tax liability payment as well as two appeals. By the time these proceedings were concluded and the funds were finally released from the [circuit] court's jurisdiction, the three year time limit for the taxpayer to request a refund had expired, therefore preventing same. Based on the foregoing, but not limited thereto, I am respectfully asking that the IRS apply the applicable portion of the estimated tax payment to my 2006 Federal tax [re]turns forward as well as those in the future until the funds are utilized.

Appeals consolidated petitioner's CDP hearing requests and assigned Settlement Officer (SO) Lynette Dallam to petitioner's case. In a letter to petitioner dated November 1, 2013, SO Dallam scheduled petitioner's hearing for December 10, 2013. Addressing petitioner's request to apply the overpayment against the liabilities at issue, the SO wrote:

> You indicated in your appeal request that you wish to have a portion of an estimated tax payment applied to your balance due. Based on the nature of your request, please submit the following information for review and analysis.
>
>      *       *       *       *       *       *       *
>
> A copy of all court documents pertaining to the payment made, the responsible parties for payments and the divorce settlement.

SO Dallam also advised petitioner that, should he request a collection alternative, he would need to provide her a financial statement and supporting documentation.

**[\*7]**  On December 10, 2013, SO Dallam called petitioner for the scheduled hearing.  During the telephone hearing petitioner restated his contention that the circuit court's freezing of his assets prevented him from timely requesting a refund.  According to SO Dallam's notes in respondent's case activity record print, petitioner requested "that it be looked into if he would be entitled to the refund."  SO Dallam's notes also indicate that she asked petitioner to send her "the court documentation he stated he had and advised TP [petitioner] that upon receipt, 2 weeks, the information would be considered in the making of a decision."[8]

Two days later SO Dallam determined that petitioner was "disputing the liability based on presumed timely filing because of outlying circumstances."  With her manager's approval, SO Dallam transferred petitioner's case to another unit within Appeals.

Appeals assigned Appeals Officer (AO) Clayton Mansfield to review petitioner's request to credit the overpayment against the liabilities at issue.  On March 4, 2014, AO Mansfield and petitioner had a telephone conversation.  AO Mansfield's notes of the conversation are as follows:  "Discussed issue with TP

---

[8]  We infer from this entry that SO Dallam gave petitioner two additional weeks to provide her the documents she had requested in her November 1, 2013, letter.  Petitioner timely complied with this request.

[*8] [petitioner]. TP [petitioner] states he sent documents relating to divorce proceeding to SO [Dallam] per her request."

AO Mansfield was unable to find the documents in petitioner's case file. On March 12, 2014, AO Mansfield followed up with petitioner by letter, writing:

[W]e are requesting a copy of the [circuit court] order concerning the estimated tax payment for the above referenced tax year referenced in your letter * * *.

If we don't hear from you, Appeals must make its decision based on the information now in your case file. If you have any questions, please call the contact person at the phone number shown above.

Please furnish the additional information by March 27, 2014.

On March 21, 2014, petitioner faxed AO Mansfield copies of the September 2007 order and the December 2009 final judgment. After reviewing these documents, AO Mansfield determined that Appeals could not credit the 2005 overpayment against the liabilities at issue because petitioner's refund claim was untimely. On March 27, 2014, AO Mansfield recorded the following notes: "Called TP [petitioner] to advise him of liability determination". The AO's notes indicate that he provided this information to petitioner by voicemail, and the administrative record does not reveal any followup communications between AO Mansfield and petitioner.

[*9]  Appeals transferred petitioner's case back to SO Dallam. On April 23, 2014, SO Dallam and petitioner spoke by telephone. SO Dallam's summary of the telephone call is as follows:

> SO [Dallam] contacted TP [petitioner] to discuss next steps regarding CDP since AO [Mansfield] issued a determination. TP [petitioner] stated he did not feel he had the chance to present all evidence to the AO. SO [Dallam] attempted to explain the issue to * * * [petitioner] and why the decision was made. SO [Dallam] explained how a portion of the refund was allowed but the remainder was not transferred to other periods even though the returns were sent in at the same time. TP [petitioner] requested to speak to * * * [an Appeals] manager regarding case and to submit additional information. SO [Dallam] advised the outcome has been decided. TP [petitioner] stated it would make him feel better because as he interpreted the directions of the [circuit court] judge, he could not file his return unless he had a $45,000 check for the IRS. SO [Dallam] advised civil court has no jurisdiction over IRS requirements and that his interpretation may be wrong. SO requested * * * [petitioner's] anticipated next step if the decision remains unfavorable so collection alternatives could be considered.

According to SO Dallam's notes, she spoke with an Appeals team manager either during or soon after her phone call with petitioner. SO Dallam summarized her conversation with the Appeals team manager as follows:

> ATM [Appeals team manager] reviewed, stated issue was timeliness and the IRC [Internal Revenue Code] is the final jurisdiction. TP [petitioner] may submit additional information but discussion as to the details of the case is not necessary. Information will be reviewed for timeliness.

**[*10]** It is unclear from SO Dallam's notes (and the administrative record in general) whether she or anyone else at Appeals conveyed this invitation for additional information to petitioner.

On April 23, 2014, the same day as her telephone call with petitioner and her discussion with an Appeals team manager, SO Dallam sent petitioner a letter, writing:

> This letter is to inform you of the information required to resolve your balance due via installment agreement. You will need to provide the following:
>
> Form 433A
> 3 months of your most recent bank statements
> 3 months of your most recent pay statements
> 1 month of expenses claimed on page 4 of the Form 433A
>
> This information must be received by May 12, 2014 in order for it to be considered.
>
> The decision letter from the Appeals Officer will be forwarded to you upon closure of your Collection Due Process case.

The letter did not request documentation pertaining to the additional information petitioner had asked Appeals to consider during the April 23, 2014, telephone call. Nor did the letter warn petitioner of any negative consequences if he failed to submit additional information before a certain date.

[*11] On June 9, 2014, respondent issued notices of determination sustaining the proposed levies. Attachments to the notices of determination state in relevant part:

> On 3/21/2014 the Appeals Officer reviewed the facts of your case and determined your [refund] request was not timely and therefore you are not entitled to the refund. The Settlement Officer advised you of this information. You stated you were not satisfied with the actions of the Appeals Officer and requested to speak to the manager. The Settlement Officer contacted the Appeals Officer's manager. After review of the case, it was stated that your issue was timeliness and there was no additional issue to address. You were advised on 4/23/2014 to submit additional information for consideration regarding the specifics you claim would sway the decision of the Appeals Officer. As of May 19, 2014, this information has not been received.

Trial

After the issuance of the notices of determination, petitioner retained counsel and timely petitioned this Court. Trial was held in Miami, Florida.

At trial petitioner proffered a letter he wrote to the IRS dated March 28, 2008. According to petitioner, this letter and other communications with the IRS constitute a timely informal claim for refund. Petitioner also proffered two letters from the IRS dated May 7 and August 7, 2008, both of which acknowledge correspondence "received" April 10, 2008. The May 7, 2008, letter advises petitioner: "[W]e [the IRS] haven't resolved this matter because we haven't completed all the research necessary for a complete response" and "[y]ou

**[*12]** [petitioner] don't need to do anything further now on this matter." The August 7, 2008, letter is substantially similar, advising petitioner: "[W]e have not yet completed our research to resolve your inquiry."

Petitioner did not provide the March 28, May 7, and August 7, 2008, letters to Appeals during his CDP hearing. Respondent objected to the admission of these letters.[9]

## OPINION

I.    Collection Principles

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for tax if the taxpayer fails to pay the tax within 10 days after notice and demand for payment is made. Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.

---

[9] At trial the Court reserved ruling on respondent's objections to the admission of Exhibits 37-P through 42-P, which include these documents. Respondent contends that the exhibits were not provided to the SO or otherwise made a part of the administrative record. We will continue to reserve ruling on the admissibility of Exhibits 37-P through 42-P pending clarification of the administrative record.

**[*13]** If a taxpayer requests a hearing in response to a notice of levy pursuant to section 6330, a hearing shall be held before an impartial officer or employee of Appeals. Sec. 6330(b)(1), (3). At the hearing the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). A taxpayer is precluded from contesting the existence or amount of the underlying liability unless the taxpayer did not receive a notice of deficiency for the liability in question or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing Appeals must determine whether proceeding with the proposed levy action is appropriate. In making that determination Appeals is required to take into consideration: (1) verification presented by the Secretary during the hearing process that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed levy action appropriately balances the need for the efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3).

[*14] II.     Standard of Review

Section 6330(d)(1) grants this Court jurisdiction to review Appeals'

determination in connection with a collection hearing.  Where the validity of the

underlying tax liability is properly at issue, we review the taxpayer's liability

de novo.  See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114

T.C. 176, 181-182 (2000).  Where the underlying tax liability is not properly at

issue, we review the determination for abuse of discretion.  Sego v. Commissioner,

114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.

The parties disagree as to whether petitioner's underlying tax liabilities are

at issue and, consequently, the appropriate standard of review.  Respondent argues

that petitioner's prior year overpayment claim is an "issue relating to the unpaid

tax" under section 6330(c)(2)(A), for which the standard of review is abuse of

discretion.  Petitioner contends that he is contesting "the existence or amount of

the underlying tax liability" under section 6330(c)(2)(B), for which the standard of

review is de novo.

There is some uncertainty in our precedents as to whether a de novo or an

abuse-of-discretion standard of review applies in a situation such as this.[10]

---

[10] In Landry v. Commissioner, 116 T.C. 60 (2001), we applied a de novo
standard of review where the taxpayer challenged the IRS' failure to apply an

(continued...)

**[\*15]** Because we find it necessary to remand this case to Appeals, we need not resolve this uncertainty today.

III.  Analysis

Before we can consider the merits of the informal refund claim issue under either standard of review, we must determine whether petitioner raised the issue during his CDP hearing.

Generally, a taxpayer must raise an issue at a CDP hearing to preserve it for review by this Court. Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); Perkins v. Commissioner, 129 T.C. 58, 63 (2007); Magana v. Commissioner, 118 T.C. 488, 493-494 (2002); Gentile v. Commissioner, T.C. Memo. 2013-175, at \*6, aff'd, 592 F. App'x 824 (11th Cir. 2014).  Section 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs., provides that a taxpayer who is seeking Tax Court review of a determination of Appeals in a CDP case can "only ask the court to

_____

   [10](...continued)
overpayment credit from another year.  We concluded that this was a challenge to the taxpayer's underlying tax liability, i.e., "the amount unpaid after application of credits to which \* \* \* [the taxpayer was] entitled".  Id. at 62.  On the other hand, we have applied abuse-of-discretion review when considering challenges to the IRS' application of a check or other tax payment.  See Melasky v. Commissioner, 151 T.C. 89, 92 (2018) (holding that a dispute as to whether a payment was properly credited to the taxpayer's account for a particular tax year is not a challenge to his underlying tax liability); see also Orian v. Commissioner, T.C. Memo. 2010-234; Kovacevich v. Commissioner, T.C. Memo. 2009-160.

**[*16]** consider an issue, including a challenge to the underlying tax liability, that was properly raised in the taxpayer's CDP hearing." The regulation further states that an "issue is not properly raised if the taxpayer fails to request consideration of the issue * * * or if consideration is requested but the taxpayer fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence." Id.

The parties agree that Appeals did not consider whether petitioner had made a timely informal claim for refund. They disagree, however, as to whether petitioner properly raised the issue during his CDP hearing.

According to respondent, petitioner during his CDP hearing only argued that: (1) the circuit court prevented him from timely seeking a refund and (2) in accordance with his formal refund claim filed in 2011, respondent should apply the overpayment against the liabilities at issue. Respondent contends that petitioner never asked Appeals to consider his informal refund claim argument. Respondent also contends that petitioner never provided Appeals with any facts or information that would indicate that the issue existed. Objecting to these factual premises, petitioner argues that the informal refund claim issue is properly before us.

[*17] In order to ascertain whether petitioner properly raised the informal refund claim issue, we first consider his statements in the CDP requests. Therein petitioner--who represented himself at the hearing--explained that he was unable to file a timely formal request for refund because of his interpretation of the circuit court order. After explaining the circumstances of his divorce, he wrote: "Based on the foregoing, but not limited thereto, I am respectfully asking that the IRS apply the applicable portion of the estimated tax payment to my 2006 Federal tax [re]turns forward as well as those in the future until the funds are utilized." We understand the "but not limited thereto" phrase to mean that petitioner reserved the right to make additional or alternative arguments for the application of the 2005 overpayment against the liabilities at issue. Construing petitioner's request liberally, we find it broad enough to include a request for consideration of the informal refund claim issue.

However, requesting consideration of an issue during a CDP hearing is not enough to preserve the issue for judicial review. The taxpayer must also present Appeals with "evidence with respect to that issue after being given a reasonable

**[\*18]** opportunity" to do so. Sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin.

Regs. According to respondent, petitioner failed to clear this threshold hurdle.[11]

The notices of determination tell the following story. After her first telephone conversation with petitioner, SO Dallam forwarded petitioner's case to another unit within Appeals. In March 2014 AO Mansfield reviewed petitioner's information and determined that petitioner's refund request was untimely. Thereafter SO Dallam informed petitioner of AO Mansfield's determination, about which petitioner expressed dissatisfaction. On April 23, 2014, petitioner was "advised * * * to submit additional information for consideration regarding the specifics you claim would sway the decision of the Appeals Officer." Petitioner did not do so as of May 19, 2014, at which time Appeals determined to sustain the collection action.

This narrative is favorable to respondent. If we were to take it at face value, it could establish that: (1) after informing petitioner of AO Mansfield's determination, Appeals gave petitioner several weeks to present evidence

---

[11] There is no dispute that petitioner provided AO Mansfield with divorce-related documents during the hearing. However, those documents relate to an argument petitioner made independently of his informal refund claim argument. We consider the informal refund claim issue an alternative argument that petitioner was required to raise separately. See Crews v. Commissioner, T.C. Memo. 2019-80, at \*33-\*34 (declining to consider an alternative argument that the taxpayer did not make at his CDP hearing).

**[\*19]** supporting any additional or alternative arguments he might wish to make and (2) petitioner failed to do so. However, the administrative record tells a different story--one in which petitioner might not have had a chance to present additional evidence.

The administrative record reveals that AO Mansfield was the first person at Appeals to consider the merits of petitioner's request to apply the overpayment against the liabilities at issue. Unfortunately, the administrative record does not provide many details about the AO's interactions with petitioner. For example, AO Mansfield's notes of a March 4, 2014, telephone call with petitioner state only that they "[d]iscussed [the] issue". As best we can tell from the sparse administrative record, the only item AO Mansfield requested was a copy of the September 2007 order. After petitioner timely provided copies of the September 2007 order and the December 2009 final judgment, AO Mansfield reviewed those documents and determined that petitioner's formal refund claim was untimely. He apparently informed petitioner of his determination by leaving a voicemail. It is unclear whether petitioner had an opportunity to follow up with the AO about the determination or otherwise raise additional issues or arguments.

Appeals promptly transferred petitioner's case back to SO Dallam. Respondent's case activity record print contains an entry from the SO dated

**[\*20]** April 23, 2014, summarizing a telephone call she conducted with petitioner on that date. According to SO Dallam's notes, petitioner "stated he did not feel he had the chance to present all evidence" to AO Mansfield and asked to submit additional information and speak to an Appeals manager. In response SO Dallam advised petitioner that "the outcome has been decided" before changing the topic to collection alternatives.

Given that AO Mansfield apparently informed petitioner of his decision by voicemail, the April 23, 2014, telephone conversation may have been petitioner's first opportunity to discuss additional or alternative arguments with an Appeals representative. By telling petitioner the "outcome" was "decided" before he had a chance to advance any additional or alternative arguments, SO Dallam may have summarily dismissed petitioner's informal refund claim argument without fully considering it. While we cannot so find because of gaps in the administrative record, we have found similar actions to be abuses of discretion. See Szekely v. Commissioner, T.C. Memo. 2013-227 (finding abuse of discretion where SO failed to give taxpayer ample time to provide information); Blosser v. Commissioner, T.C. Memo. 2007-323 (finding abuse of discretion where SO failed to consider taxpayer's statements during telephone hearing).

[*21] Further complicating matters is the lack of clarity in the administrative record about the identity of the person who, on April 23, 2014, purportedly advised petitioner to submit additional information to Appeals. Because SO Dallam told petitioner that the "outcome" was "decided", we doubt she requested additional information from petitioner on that date. Our doubts find further support in SO Dallam's followup letter to petitioner. Therein SO Dallam requested various documents "required to resolve your balance due via installment agreement." The letter did not request documentation pertaining to the additional information petitioner had asked Appeals to consider during the April 23, 2014, telephone call.[12]

That said, SO Dallam's notes from April 23, 2014, also indicate that she spoke with an Appeals team manager either during or immediately after her telephone conversation with petitioner. According to SO Dallam's notes, the Appeals team manager told her that petitioner could "submit additional information but discussion as to the details of the case is not necessary." It is

---

[12] The letter's only reference to AO Mansfield's determination is the following sentence, which cryptically states: "The decision letter from the Appeals Officer will be forwarded to you upon closure of your Collection Due Process case." It is unclear what "decision letter from the Appeals Officer" means in this context. However, a reader could reasonably infer from this sentence that, as of the date of the letter, AO Mansfield's decision was final. We also note that there is no "decision letter" from AO Mansfield in the administrative record.

[*22] possible that the Appeals team manager joined the April 23, 2014, telephone call and orally conveyed this invitation to petitioner. However, we are unable to conclude from SO Dallam's vague notes that such a conversation happened.

In any event SO Dallam's notes reflect a radically different conversation with petitioner on April 23, 2014, from that portrayed in the notices of determination. The notices themselves are confusing, stating: "[Y]ou [petitioner] were advised on 4/23/2014 to submit additional information for consideration regarding the specifics you claim". By relying on the passive voice here, respondent deprives us of any clue as to who so advised petitioner. Without more information about this purported dialogue, the administrative record is insufficient for the Court to determine whether petitioner properly raised the informal refund claim issue.

In such situations we can remand CDP cases to Appeals to develop the record. See Wadleigh v. Commissioner, 134 T.C. 280, 299 (2010) (remanding "to clarify and supplement the administrative record" when we determined that the administrative record was "insufficient to enable us to properly evaluate whether the Appeals Office abused its discretion"); Hoyle v. Commissioner, 131 T.C. 197, 204-205 (2008) (remanding so that Appeals could clarify the record as to why it determined that all requirements of applicable law were met), supplemented by

**[\*23]** 136 T.C. 463 (2011).  Accordingly, we will remand this case for Appeals to clarify the record as to the evidence (if any) on which Appeals relies to conclude that petitioner was advised on April 23, 2014, to submit additional information regarding the specifics of his refund claim.  If Appeals is unable to conclude that petitioner was so advised, Appeals shall consider any additional information or evidence that petitioner may wish to submit.

We will retain jurisdiction to preserve petitioner's right to judicial review of the administrative determination.  See Wadleigh v. Commissioner, 134 T.C. at 299.  We have considered all the parties' arguments and, to the extent not addressed herein, we conclude that they are moot, premature, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued.